IDA M. DAILY, Respondent, v. WM. F. MAXWELL and ERNEST C. MAXWELL, Appellants.

Kansas City Court of Appeals, January 2, 1911.

1. **AUTOMOBILES:** Negligence. Plaintiff, with her daughter, was driving a gentle but spirited horse in a public street in a proper manner, when an automobile suddenly came around a corner at a high and dangerous rate of speed, and made straight for her horse, which took fright and ran away, upsetting the buggy and injuring her. *Held*, that plaintiff was entitled to the inference that the autoist was negligent in running too fast, in not sounding a warning in time, in not keeping a careful lookout while approaching and making the turn, and in heading the machine in the direction of the horse.

2. ———: *Incompetent Chauffeur.* The owner of a car must exercise reasonable care in the selection of a chauffeur, and failing in this, will be held liable for the consequences of his own negligence in sending out his car in charge of an incompetent operator.

3. ———: ———. Where the owner of a car permits his son, 16 years old, to take out his car, for the pleasure of the son, and it is shown that he lacked the judgment, discretion and care essential to the proper and careful operation of a vehicle so powerful as an automobile, the father is liable for any injuries caused by the negligence of the son in operating the car.

4. ———: ———. If the owner of the car is not present at the infliction of the injury, he cannot be held liable unless it is shown that the person in charge not only was the agent or servant of the owner, but also was engaged at the time in the business of his service.

5. ———: ———. Where a chauffeur either with or without his master's consent uses the machine for his own business or pleasure, and negligently injures another, the master is not liable for the reason that the negligent act was entirely outside the scope of the servant's employment.

6. ———: · *Instructions.* An instruction which told the jury that "an automobile when run upon the public highways is considered a dangerous appliance as a matter of law" is erroneous.

Appeal from Buchanan Circuit Court.—*Hon. L. J. Eastin,* Judge.

REVERSED AND REMANDED.

*Rusk & Stringfellow* for appellants.

(1) No negligence on the part of the driver of the car was shown. (2) The court erred in giving instructions F and G on his own motion for defendant. The automobile is not considered in law as dangerous per se. Huddy on Automobiles (2 Ed.), pp. 24, 29 and 33; 28 Cyc. 25; Cunningham v. Castle, 3 N. Y. S. 1057; Vincent v. Crandall and Godley Co., 115 N. Y. S. 600; Danforth v. Fisher, 75 N. H. 3, 71 A. 535; Lewis v. Amorous (Ga.), 59 S. E. 338. (3) A parent is not liable

for the torts of his minor son. Basset v. Riley, 131 Mo. App. 676; Needles v. Burke, 81 Mo. 569. (4) The master is not liable for the negligence of his servant unless the servant was at the time acting within the scope of his employment and about his master's business. 26 Cyc. 1518; 20 Am. and Eng. Ency. Law 167; 2 Thompson on Negligence, 855, 885, 886; Shearman and Redfield on Negligence, sec. 62, 63; Cooley on Torts, 533 et seq. (5) The relation between the owner of an automobile and his chauffeur in no way differs from that existing between the master and servant generally and is governed by no other rules than the general rules of law governing the relation of master and servant. It is essential to a recovery that it shall be made to appear that the accident occurred while the person in charge of the automobile was using it in the course of his employment and on his master's business. Evans v. Auto. Sup. Co., 121 Mo. App. 277; Lotz v. Hanlon, 217 Pa. 339; Slater v. Thresher Co., 97 Minn. 305, 107 N. W. 133; Patterson v. Kates, 152 Fed. 481; Reynolds v. Buck, 127 Iowa 601, 103 N. W. 946; Clark v. Buckmobile Co., 94 N. Y. S. 771; Howe v. Leighton, 75 Mo. App. 102; Jones v. Hoge, 92 Pac. 433; Lewis v. Amorous, 59 S. E. 338. (6) The fact that the master has given permission to his servant or his son to use the machine does not alter the legal relations. Where the agent or servant is using the automobile outside the scope of his employment, and not upon his master's business, no liability is fastened upon the master merely because he had given permission to his servant to use the car. Cunningham v. Castle, 3 N. Y. S. 1057. (7) A master is not liable for the negligent use of every dangerous appliance merely because he has placed same in charge of a servant. Sweeden v. Improvement Co., 125 S. W. 439. (8) The owner of an automobile is liable for the negligent acts of a chauffeur or son only if such chauffeur or son was inexperienced or incompetent and the owner

152 App.—27

knew or ought to have known such fact. (9) The evidence of the owner and the driver that the driver at the time of the accident was not engaged in any business for the owner, but was about his own business or pleasure, being undisputed, no jury question is raised on that point. Long v. Nute, 123 Mo. App. 204; Mayer v. Benedict, 108 N. Y. S. 228. (10) The court erred in admitting evidence as to the conduct or action of the driver of the automobile after the accident.

*Peter J. Carolus* and *James W. Boyd* for respondent.

(1) In reply to appellant's point one, we cite the statute of this state, which prescribes in plain terms what the duties of the driver of a car are. Sessions Acts, 1907, p. 73, et seq. The law relating to the use of automobiles on public streets and highways is clearly stated in the following cases: Sapp v. Hunter, 134 Mo. App. 685, 115 S. W. Rep. 463; Hall v. Compton, 130 Mo. App. 675, 108 S. W. 1122; Fulwilder v. Gas Light & Power Co., 216 Mo. 582, 116 S. W. Rep. 508; McFern v. Gardner, 121 Mo. App. 1. (2) In addition to the positive violation of our statute relating to the control of motor cars by boys under 18 years of age, we call the court's attention to the law as laid down in volume 21 of the American and English Encyclopedia of Law, second edition, at pages 1057, 1058, and the authorities cited under notes 1 and 2, at page 1058, as follows, to-wit: iv. Liabilities of parent. 1. For torts of child. The general rule is that the parent is not liable in damages for the torts of his minor child . . . unless the acts be performed with the parent's consent, or in connection with the parent's business (1). Where, however, the torts complained of were committed while the child was engaged in the parent's service within the scope of his employment, or where the circumstances show that it was done with the parent's knowledge and by his authority, or with his consent, he is liable (2).

Citing Dunks v. Grey, 3 Fed. Rep. 862; Teagarden v. McLaughlin, 86 Ind. 476, 44 Am. Rep. 332; Sharpe v. Williams, 41 Kan. 56; Lashbrook v. Patten, 1 Duv. (Ky.) 317; Beedy v. Reding, 16 Me. 362; Stohl v. Levan, 39 Pa. St. 177; Hower v. Ulrich, 156 Pa. St. 410; Schaefer v. Oterbrink, 67 Wis. 495, 58 Am. Rep. 875. See, also, Cameron v. Heister, 10 Ohio Dec. (Reprint) 651, 22 Cinc. L. Bil. 884. Note 6—The presumption is that a minor child, living with his father and using his team and conveyance in and about the business of such father, is acting on his behalf and under his directions, so as to render the father liable for the tort of the son. Gerhardt v. Swaty, 57 Wis. 24, 14 N. W. 851; Schaefer v. Otterbrink, 67 Wis. 495, 30 N. W. 922, 58 Am. Rep. 975. (3) Joint liability of master and servant. For a tort of the servant committed within the scope of his employment, a joint action may be maintained against master and servant. New Ellerslie, etc., Club v. Stewart, 29 Ky. L. R., 93 S. W. 598; Able v. So. Ry. Cl., 73 S. C. 173, 52 S. E. 962; Railroad v. Chambers, 79 Ala. 338; Whalen v. Railroad, 63 Atl. 993 (N. J. L.). Where a complaint against a carrier and its employee alleged that "defendants" failed to use reasonable care, etc., and so negligently operated a boat that it collided with a pier, injuring the plaintiff, states a cause of action against defendants jointly, though it also alleges that the boat was under the control of the employee. Whalen v. Railroad, 63 Atl. N. J. L.; McKinnis v. Railroad, 200 Mo. 347, 98 S. W. 590. Section boss and railway company can be sued jointly when the sole ground of liability of the railroad company is the act of the section boss alone. Railroad v. Roke, 2 Ga. App. 577, 59 S. E. 462. Citing cases in Cent. Dig. vol. 34, sec. 1238, 141 U. S. Sup. Martin v. Railroad: The section boss is personally liable for injury resulting from his negligence and the railroad company is liable for the misfeasance of its agent.

JOHNSON, J.—Plaintiff was injured in a runaway accident on one of the public streets of St. Joseph and claims in her petition for damages that her injuries were caused by negligence of defendants in the operation of a gasoline automobile which frightened the horse attached to the buggy in which she was riding and caused him to run away. She prevailed in the trial court where a jury gave her a verdict of one thousand dollars against both defendants and the cause is here on the appeal of defendants from a judgment rendered on that verdict.

The injury occurred about ten o'clock in the morning of June 25, 1908, near the corner of Folsom street and Ashland avenue, both of which are paved streets much used by travelers. The roadway of Folsom street is thirty-six feet wide and, for convenience, we shall speak of its directions as being east and west, though the streets at this place are not laid with cardinal points of the compass. Ashland avenue is twenty-four feet wide and runs at right angles with Folsom street. Plaintiff, who lived at Avenue City, a village northeast of St. Joseph, drove to the city in company with her daughter who was then sixteen years old. They were riding in a buggy and their horse, though spirited, was gentle and had been used by plaintiff and her family as a family horse. Her daughter was driving and they were going south on the west side of Ashland avenue when, as they neared the intersection of Folsom street, the automobile dashed around the corner at high speed and without warning. Its sudden appearance in close proximity to the horse so frightened him that he whirled around to the left, made a complete turn and bolted northward. He had run but a short distance when the vehicle was upset and both occupants were thrown out and injured.

There is a residence at the northeast corner of Folsom street and Ashland avenue and the premises are so much higher than the streets that the automobile

could not be seen until it reached the corner, and the horse was startled and scared, not only by the sudden and unheralded appearance of the swiftly running car which came from the west and was turning north, but also by the heading of the machine on the turn in a way to point it towards the horse.  Witnesses for plaintiff estimate the speed of the car on the turn at twenty or twenty-five miles per hour and state that its motor made a loud and terrifying noise.  While we think that owing to the narrowness of the streets this estimate of the speed must be wide of the real fact, we find the evidence of plaintiff to the effect that the car was running at a high and, under the circumstances, dangerous rate of speed, is substantial.  As to the noise, uncontradicted evidence shows that the car was new, was of a standard make, was provided with appliances for muffling the noise of the motor, and that it made no more noise than is usually made by automobiles under similar conditions.  Further, we find substantial evidence tending to show that the horn was not sounded as the car approached the corner and that the autoist—the defendant Ernest—was talking to his seat companion and was not looking ahead.

The foregoing statement is gleaned from the evidence most favorable to plaintiff.  On the part of defendant, the evidence shows that the horn was blown as the car approached the corner; that the turn was made slowly and on as large a circle as the limits of the roadway would permit, and that on account of the restiveness of another horse being driven northward, the car was stopped at a point on the east side of Ashland avenue before plaintiffs' horse took fright and became unmanageable.

Being in conflict with the evidence of plaintiff, which, as we have said, we find to be substantial, we reject this view of the facts in our consideration of the demurrer to the evidence offered by defendants and refused by the court and shall consider the facts only

from the viewpoint of plaintiff. Other material facts about which there is no controversy thus may be stated. The car belonged to defendant Wm. F. Maxwell, who had owned it about one month. It was a new five-passenger Oldsmobile and had been purchased by Mr. Maxwell for the use of himself and his family. Before buying the car he had owned a Buick automobile and while he had that car he and his son—his co-defendant—had operated it. He did not learn how to operate the Oldsmobile car and relied on his son, who was sixteen years old, to perform the duties of chauffeur to the family. All of the testimony shows that Ernest was a bright and careful boy and that he had become proficient as a chauffeur. On the occasion in question he had asked and obtained the consent of his father to take some of his young friends—three girls and a boy—whose ages ranged from sixteen to twenty-one years—automobile riding. It was the boy's party and his father had nothing to do with it except to give his consent to the use of the car for the pleasure of his son and his son's friends.

An ordinance of the city was pleaded and proved restricting the speed of motor cars to ten miles per hour on tangents and six miles per hour on turns at street corners. Plaintiff seeks to recover from the boy on the ground that his negligence in the operation of the car was the proximate cause of the injury of the plaintiff, and from his father on two grounds, viz.: (1) Negligence in employing an incompetent chauffeur and (2) that under the rule of *respondeat superior*, the son being the servant of the father in the operation of the car, the father must respond in damages for the consequences of the son's negligence.

In the instructions given at the request of plaintiff and on the court's own motion, the jury were told that "an automobile when run upon the public highways is considered a dangerous appliance as a matter of law," and a verdict against the senior defendant was authorized in the event the jury found that negligence of the

junior· defendant caused the injury and further found either that the young man on account of his age was incompetent to be entrusted with the operation of the machine or that he was acting as the servant of his father and was about his father's business when the injury was inflicted.

In the determination of the questions of law we shall first dispose of the demurrer to the evidence offered by defendant Ernest.

An automobile is recognized by courts as a lawful vehicle under the rules of the common law and, as such, its operator stands on equal ground with the drivers of other conveyances with respect to the right to enjoy the use of the public highway. The mere fact that plaintiff's horse took fright at the machine, of itself, would not give her a cause of action. As long as an autoist observes the laws of the road, he should not be held responsible for the consequences of a meeting between his machine and a vicious or high strung and insufficiently broken horse. But on account of its speed and power and the noises it emits, an automobile when carelessly run may be exceedingly terrifying even to gentle and well broken horses, and the rules of the common law, as well as those of the statute (Rev. Stat. 1909, ch. 83, sec. 8516, et seq.), demand of the drivers of such vehicles the observance of a due regard for the rights and safety of others. To run so powerful a vehicle at a high rate of speed on busy streets without warning and without keeping a vigilant lookout is negligence amounting to a wanton disregard for the rights of others. It is the assertion in the most truculent way of a superior right to that which belongs to all in common.

The evidence of plaintiff abundantly supports her charge of negligence against the driver of the automobile. While she was driving in a proper manner on the public road, the automobile suddenly shot around the corner and made straight for her horse in a way to stampede even the gentlest animal. In coming out of

Folsom street to turn north on Ashland avenue, the autoist, on account of the obstructions at the corner, could not see what was in Ashland avenue until he reached the property line, nor could the horse of the plaintiff see the machine until it flashed around the turn bearing down on him. The jury were entitled to the inference that the autoist was negligent in running too fast; in not sounding a warning in time to have enabled plaintiff to stop her horse a safe distance back; in not keeping a lookout while approaching and making the turn, and in heading the machine in the direction of the horse instead of bearing well to the east side of the avenue. We cannot refrain from saying that in our opinion the greater weight of the evidence exculpates the young man from these imputations, but as we said before, the evidence of plaintiff is substantial and reasonable and in such case we could not weigh the evidence without invading the province of the jury. The demurrer offered by Ernest was properly overruled.

Next we shall consider the contention of the senior defendant that his demurrer to the evidence should have been sustained. He was not present at the injury and his liability, if it exists, must be founded on the consent he gave his son to use the car. The mere fact that his son negligently injured plaintiff, of itself, would not support a cause of action against him, since the rule is well settled in this state that a father is not responsible for injuries inflicted through the negligence or willful wrong of his minor child. [Needles v. Burk, 81 Mo. l. c. 572; Bassett v. Riley, 131 Mo. App. 676.] It requires something more than the mere relationship to hold the father liable for the child's torts.

But no one can deny that an automobile in the hands of a careless and incompetent driver would be a dangerous machine to turn loose on busy streets and would constitute a menace to travelers. The owner of a car must exercise reasonable care in the selection of a chauffeur and, failing in this, will be held liable for

the consequences of his own negligence in sending out his car in charge of an incompetent operator. Boys are very apt at learning how to run vehicles of all sorts—more apt than men—and the evidence before us is all to the effect that Ernest was a bright boy and careful, too, for one of his years. But he was only a boy and the jury were entitled to say, from the mere fact that he was only sixteen years old, that he lacked the judgment, discretion and care to be expected of a mature person, and which was essential to the proper and careful operation of a vehicle so powerful as an automobile. In section 8510, Revised Statute 1909, the Legislature has said, in so many words, that a person under eighteen years of age is incompetent to act as an auto driver. "Where a statute forbids the employment of a child under a certain age, it is in effect a determination that a child of that age does not possess the judgment and discretion necessary for the pursuit of a dangerous work." [26 Cyc. 1221.]

We do not go to the length of holding that the statutory prohibition against giving a license to run an automobile to a person under eighteen years of age makes the employment of a chauffeur under that age negligence as a matter of law, but we do say that it gives the jury the issue as one of fact of classifying the conduct of one who turns his car over to an operator who is under the statutory age with permission to run it over the streets of a populous city. We conclude the court was right in overruling the demurrer of Wm. F. Maxwell, on the ground that the evidence supports the charge that the owner of the machine negligently suffered it to be operated by an incompetent driver and thereby converted it into a dangerous and menacing instrumentality.

Next we shall direct attention to the question of whether the senior defendant may be held liable under the evidence on the ground that his son was his agent or servant in the operation of the car.

All the authorities are in accord in holding that in an action based on the negligent running of an automobile the owner of the car who was not present at the infliction of the injury cannot be held liable except it be shown that the person in charge not only was the agent or servant of the owner but also was engaged at the time in the business of his service. [Evans v. Automobile Co., 121 Mo. App. 266; Lotz v. Hanlon, 217 Pa. 339; Slater v. Thresher Co., 107 N. W. Rep. 133; Patterson v. Kates, 152 Fed Rep. 481; Reynolds v. Buck. 103 N. W. 946; Clark v. Buckmobile Co.. 94 N. Y. Supp. 771; Howe v. Leighton, 75 Atl. Rep. 102; Jones v. Hoge, 92 Pac. 433; Lewis v. Amorous, 59 S. E. 338.]

Where a chauffeur, either with or without his master's consent, uses the machine for his own business or for his own pleasure and negligently inflicts injury on another, the master cannot be held liable, for the reason that the negligent act being entirely outside the scope of the servant's employment, cannot call into action the rule of *respondeat superior*. The fact of consent is material only in the solution of the issue of whether or not the use of the machine was, in fact, on business of the master. [Cunningham v. Castle, supra.]

Should we regard the relationship between the two defendants merely as that of owner and chauffeur—master and servant—the owner should not be held liable for the negligence of the chauffeur. since the evidence shows beyond question that the latter was using the machine merely for his own pleasure. But Ernest was more than a mere chauffeur. He was the minor son of the owner and was using the car for his own pleasure, it is true, but with the permission of his father and for one of the very uses for which his father kept the vehicle. The evidence discloses that the machine was devoted to the use of the family of which Ernest was a member. It was a pleasure vehicle and when used for the pleasure of one of the minor children of the owner, how can it be said that it was not being used on business of the

owner? It is the practice of parents to provide their children healthful and innocent amusements and recreations and certainly, it is as much the business of parentage to supervise and control the pleasures of their children as it is to give them nurture and education. Had Ernest been taking his mother for a pleasure ride instead of taking some of his young friends, no one would contend that he was not on his father's business; or, had he been using the car on an errand of his own, such as shopping for himself, or going to school, he would have been on his father's business, since it was the duty of his father to support and educate him. The rule that a father is not liable for the torts of his minor child applies only to cases where the tort is committed without the consent of the parent and without the scope of any duty he owes his child. We conclude that in running the car with the consent of his father and within the scope of family uses, Ernest was the agent and servant of his father.

We find, however, that the judgment as to both defendants must be reversed and the cause remanded on account of error in the instruction of the court to the effect that an automobile "when run upon the public highways is considered a dangerous appliance, as a matter of law." Plaintiff relies on the decision of this court in Hall v. Compton, 130 Mo. App. l. c. 681, where we said:

"Though, as we have said, automobiles are lawful vehicles and have equal rights on the highway with horses and carriages, their drivers should operate them with that degree of care and prudence and that consideration for the rights and safety of others to be expected of ordinarily prudent and humane persons. Being heavy, powerful, fast and noisy, motor cars if carelessly handled are as terrifying as they are dangerous. A reasonably considerate person in the situation of defendant would have anticipated the danger to the safety of the occupants of the buggy in running his car headlong

in such close proximity to the horse. The possession of a powerful and dangerous vehicle, instead of giving defend-ant any right of way imposed on him the duty of em-ploying care commensurate to the risk of danger to oth-ers engendered by the presence of his vehicle on the public thoroughfare."

We did not say that an automobile is a danger-ous instrumentality *per se,* but only spoke of it as be-ing dangerous when carelessly operated. When care-fully handled, it is not dangerous either to its passen-gers or to other persons using the public highways who are, themselves, in the exercise of reasonable care. Its great capacity and power endows it with dangerous pos-sibilities, but human agency—wanton or negligent agen-cy—must call them into play. It would seem paradox-ical to say in one breath that an automobile is a lawful vehicle and in the next that it is dangerous *per se,* as dynamite, or a locomotive, or a mad bull are dangerous. If it belonged to the latter class, the rules of the com-mon law would not permit its presence on public high-ways for general use. So far as we are advised, the authorities are all one way on this question. In Huddy on Automobiles (2 Ed.), the author says (p. 33):

"It is particularly noticeable that up to the pres-ent time (1909) no court has stated or decided that the automobile itself is a dangerous vehicle, either to the occupants or to the public . . . (p. 24). All the courts of the United States before whom the question has come as to whether the automobile is an agency dangerous *per se* have emphatically held that it is not dangerous *per se.*"

In 28 Cyc., p. 25, it is said: "The use of motor ve-hicles as a means of conveyance upon the public streets and highways is of itself neither a nuisance nor unlaw-ful and when operated with a due regard to the rights of others is not negligence."

In Cunningham v. Castle, 111 N. Y. Supp., p. 1057, the court say:

"It is urged that the automobile was a dangerous instrumentality, and that, having been intrusted to the chauffeur, the liability of the master still attached because of its dangerous character. The automobile is not necessarily a dangerous device. It is an ordinary vehicle of pleasure and business. It is no more dangerous *per se* than a team of horses and a carriage, or a gun, or a sailboat, or a motor launch."

In Vincent v. Crandall, 115 N. Y. Supp., p. 600, it is said: "The case of Travell v. Bannerman, supra, is not in point. The material which did the mischief in that case was inherently dangerous, and the result which followed from its being left exposed and accessible was to have been reasonably anticipated. In other words, "while the operation of a motor vehicle is attendant with dangers not common to the use of the ordinary vehicle, it cannot be placed in the same category as locomotives, gunpowder, dynamite, and similar dangerous machines and agencies, and the rules of law applicable to dangerous instrumentalities do not apply. 28 Cyc. 25, and cases cited."

In Danforth v. Fisher, 71 Atl. Rep. 535, the Supreme Court of New Hampshire say: "There is nothing inherently dangerous about an automobile any more than about an axe. Both are harmless so long as no one attempts to use them, and both are liable to injure those who come in contact with them when they are used for the purpose for which they were intended."

In Lewis v. Amarous, 59 S. E. Rep. 338, the Court of Appeals of Georgia say: "It is insisted in the argument that automobiles are to be classed with ferocious animals and that the law relating to the duty of the owners of such animals is to be applied. It is not the ferocity of automobiles that is to be feared but the ferocity of those who drive them. Until human agency intervenes, they are usually harmless. While by reason of the rate of pay allotted to judges in this state few, if any, of them have ever owned one of these machines, yet

some of them have occasionally ridden in them, thereby acquiring some knowledge of them; and we have, therefore, found out that there are times when these machines not only lack ferocity, but assume such an indisposition to go that it taxes the limits of human ingenuity to make them move at all. They are not to be classed with bad dogs, vicious bulls, evil disposed mules and the like."

In Jones v. Hoge, 92 Pac. Rep. 433, the Supreme Court of Washington say: "While the operation of the automobile is attended with some dangers not common to the use of ordinary vehicles, they are not *per se* dangerous so as to render the owner responsible for injuries to the traveler on the highway under all circumstances merely because the operator was not careful or competent."

To the same effect are the decisions of the Supreme Court of Wisconsin in Steffen v. McNaughton, 104 N. W. Rep. 1016, and of the Supreme Court of Indiana in McIntyre v. Orner, 76 N. E. Rep. 752. In the latter case, it is said: "It is the manner of driving an automobile on the highway too often indulged in by pleasure seekers and for the exploitation of a machine, that constitute a menace to public safety."

The error of this instruction was clearly prejudicial since, as we have said, the idea that an automobile is *per se* dangerous is incompatible with the well settled rule of law that it is a lawful vehicle. The jury, in effect, were told to regard it as they would a wild and ferocious beast and to judge the conduct of the driver by the rules that should apply to the keeper of such animal.

Other points made by defendants have been examined and are ruled against them.

The judgment is reversed and the cause remanded. All concur.