ALLEN v. BLAND. (No. 625.) †

(Court of Civil Appeals of Texas. Amarillo. May 23, 1914. Rehearing Denied June 13, 1914.)

1. MUNICIPAL CORPORATIONS (§ 706*) — STREETS—ACTION, FOR INJURY BY AUTOMOBILE—EVIDENCE.

In an action for an injury to plaintiff's wife, caused by being run over on a city street by defendant's automobile driven by his minor son, the issue of the boy's carelessness and incompetency being raised, the court properly permitted a witness to testify that he had on two occasions met the boy with the automobile on the public road and he had on each occasion failed and refused to give him any part of the road.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

2. MUNICIPAL CORPORATIONS (§ 706*) — STREETS—ACTION FOR INJURY BY AUTOMOBILE—EVIDENCE.

Such evidence was also admissible as tending to sustain plaintiff's contention that the boy was so small that he was not able to look over the steering wheel and the front of the machine and see objects ahead of him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

3. DAMAGES (§ 158*)—EVIDENCE ADMISSIBLE UNDER PLEADINGS — PERSONAL INJURIES — IMPAIRMENT OF FACULTIES.

The mind and nervous system being so intimately connected with the body, and so likely to be affected by physical injuries, proof of impairment of these faculties is admissible under allegations in substance setting up grievous or permanent injuries.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 441–444; Dec. Dig. § 158.*]

4. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—EVIDENCE.

In an action for an injury to a woman caused by being run down by defendant's automobile, the admission of evidence of injury to the woman's nervous system, if erroneous, was harmless, where the other evidence was sufficient to sustain the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

5. MUNICIPAL CORPORATIONS (§ 706*)—USE OF STREET AS HIGHWAY—ACTION FOR INJURY BY AUTOMOBILE—INSTRUCTIONS.

In an action for an injury to plaintiff's wife caused by being run over on a city street by defendant's automobile being driven by his minor son 11 years of age, an instruction that to render defendant liable he must reasonably have anticipated the injury as a consequence of permitting the boy to drive the car, and that defendant's negligence made it possible for the boy to cause the injury, etc., and, if defendant permitted the boy to drive the car upon the streets of the city and because of his inexperience, youth, etc., defendant should have anticipated that danger and injury would result to other persons, and if the boy failed to exercise ordinary care at the time of the injury, etc., and if such negligence upon the part of both was the proximate cause of the injury to find for plaintiff, etc., presented the issue of negligence of both parent and son in as favorable a light as he was entitled to have it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error pending in Supreme Court.

6. MUNICIPAL CORPORATIONS (§ 705*)—USE OF STREETS—AUTOMOBILES — OPERATION BY CHILD.

An automobile is not a dangerous instrument per se when operated by a careful and competent driver, but a powerful heavy machine operated by an 85-pound boy 11 years of age along the streets of a populous town may become a menace to other persons on the streets.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705.*]

7. MASTER AND SERVANT (§ 301*)—INJURY BY AUTOMOBILE—LIABILITY OF FATHER.

Where a boy 11 years old by consent of his father purchased an automobile, kept it at a garage, the bills being paid by the father, the boy having unlimited authority to call for the car at any time of day or night, the boy in operating the car was the servant of the father, and hence the father was liable for an injury to a third party under the doctrine of respondeat superior.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

8. MUNICIPAL CORPORATIONS (§ 706*) — STREETS—ACTION FOR INJURY BY AUTOMOBILE—EVIDENCE.

In an action for an injury to plaintiff's wife caused by being run down on a city street by defendant's automobile while being operated by his 11 year old son, evidence *held* to sustain a finding that the boy was incompetent and reckless.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by C. E. Bland against R. S. Allen. Judgment for plaintiff, and defendant appeals. Affirmed.

Carrigan, Montgomery & Britain, of Wichita Falls, for appellant. Mathis & Kay, of Wichita Falls, for appellee.

HALL, J. This appeal is from the district court of Wichita county. Appellee sued appellant to recover damages alleged to have been sustained by Mrs. Belle Bland, wife of appellee. It is alleged, in substance, by appellee that his wife was run over and injured by an automobile driven by De Course Allen, the minor son of appellant; that said son was about 11 years of age; and that he carelessly, negligently, and willfully drove said automobile against the said wife of plaintiff, knocking her down in the street and caused the automobile to pass over her prostrate body. After describing her injuries, the petition states that De Course Allen was a very small, weak, reckless, careless, and inexperienced boy, wholly unfit and incapacitated to drive or steer an automobile through the streets of such a town as Wichita Falls, crowded as it was with people passing back and forth and across said street, all of which facts were well known to defendant, and that defendant had allowed his son to drive his machine at all times, day and night, and purchased the car for him; that defendant was guilty of gross, inexcusable, reckless, and

careless negligence. The appellant answered by general denial and by a special plea, alleging that appellee's wife was guilty of contributory negligence in that she went upon the street in a crowded locality without looking or listening or taking any precaution whatever for her own safety, and that she negligently stepped in front of the car being driven by appellant's son, when said automobile was so close to her that appellant's son was unable to stop the same before she was struck thereby, although he used every effort in his power to do so. The jury rendered a verdict in favor of appellee for the sum of $3,500.

[1-4] The first assignment of error presents for review the ruling of the court, in admitting the testimony of the witness St. Claire Sherrod, to the effect that witness had on at least two occasions met De Course Allen driving an automobile along the public road, and that said De Course Allen on each occasion had failed and refused to give him any part of the road. Appellant's objection to this testimony is that it was calculated to prejudice the jury against the boy and against appellant, as well as against the case. The issue of the boy's recklessness, carelessness, and incompetency was raised by the pleadings. Appellant had introduced several witnesses who testified that they had been in the car with the boy, and that he was careful and a competent driver, and that they had never known him to be guilty of any carelessness in the operation of his automobile. It was further shown that the boy had owned the car for several months, during which time he had driven it about 3,000 miles. It further appears from the record that the automobile in question was a powerful machine of the "underslung" type; that the driver's seat was only six or eight inches high, and when driving it the boy's face barely reached the driving wheel. We think this testimony was admissible to rebut the contention of appellant that his boy was careful and competent. The safety of the public demands that drivers of vehicles should be familiar with and observe the law of the road and the rights of other travelers. This testimony tended to show that the boy was either ignorant or heedless of the law of the road, and we think had a bearing directly upon the issue raised by the pleadings. It was further admissible as tending to sustain appellee's contention that while seated in his car he was not able to look over the steering wheel and the front of the machine and see objects ahead of him. H. & T. C. Ry. Co. v. Willie, 53 Tex. 318, 37 Am. Rep. 756; Texas Central R. Co. v. Rowland, 3 Tex. Civ. App. 158, 22 S. W. 134; Texas, etc., Ry. Co. v. De Milley, 60 Tex. 194; Gulf, etc., Ry. Co. v. Johnson (Tex. Civ. App.) 42 S. W. 584.

Plaintiff alleges that his wife was knocked down and run over by a heavy automobile,

"thereby inflicting upon her body painful, serious, and permanent injuries, lacerations, cuts, and bruises, which caused her then, and continuously since has caused her, intense pain throughout various portions of her body; * * * that her right foot and ankle was seriously and permanently bruised, the bones thereof fractured, and the muscles, tendons, and ligaments seriously and permanently lacerated, strained, and injured, causing a lameness inside of right foot which has continued from that time until this, and which will continue permanently; that along her left side and across the upper portion of her body the muscles, tendons, and ligaments of the same are seriously bruised, strained, cut, and lacerated, which caused her great physical pain"; and further declares that she has suffered great physical and mental pain by reason thereof, beginning at the time of the accident until the present, and that she will continue to suffer great physical and mental pain growing out of said injuries for years and to some degree as long as she lives. Over the objection of appellant, Mrs. Bland was permitted to testify that before being injured she was in comparatively good health, but that since the injury she was a nervous wreck. The objection to this testimony was that there was no pleading to sustain it. In our opinion this objection is not well taken. The rule, as announced in 13 Cyc. 189, is:

"The mind and nervous system being so intimately connected with the body and so likely to be affected by physical injuries, proof of impairment of these faculties is admissible under allegations in substance setting up grievous or permanent injuries."

This rule has been cited with approval and followed by the courts of this state. Rapid Transit Ry. Co. v. Allen, 54 Tex. Civ. App. 245, 117 S. W. 487; Texas & New Orleans Ry. Co. v. McCoy, 54 Tex. Civ. App. 278, 117 S. W. 446; Texas Midland Ry. Co. v. Simmons (Tex. Civ. App.) 152 S. W. 1106; Chicago v. McLean, 133 Ill. 148, 24 N. E. 527, 8 L. R. A. 765; Babcock v. St. Paul, etc., Ry. Co., 36 Minn. 147, 30 N. W. 449. The only way in which this testimony could have injured appellant is in augmenting the amount of the damages recovered, and since there is sufficient testimony to sustain the verdict, independent of the evidence relating to the condition of her nervous system, the admission of the evidence, if otherwise improper, is harmless.

[5, 6] Appellant submits the third and fourth assignments of error together and urges the propositions that, since an automobile is not per se a dangerous instrument, before appellant can be held liable for damages caused by his minor son, in operating it with his permission, the plaintiff must show by a preponderance of the evidence that such minor son was incompetent to properly and carefully operate it under ordinary conditions, and that this fact was known to the parent, and that the jury must further find that an ordinarily prudent person would not have, under the same circumstances, permitted such minor to operate the car. It is further urged under these assignments that it must appear that the son was engaged in the business of the parent and therefore occupied the position of a servant, or that the parent was guilty of negligence in permitting his son to operate it, and it is not sufficient that the father's act made it possible for the child to cause the injuries complained of, nor is it sufficient that the parent might have anticipated the injury. The objection under these assignments is to that part of the charge wherein it is said:

"In order to render a parent liable for an injury caused by the negligence of his child, it is essential that it should appear from the evidence that the parent might reasonably have anticipated the injury as a consequence of permitting the child to employ the instrument which produced the injury, and it must appear that the father's negligence made it possible for the child to cause the injury complained of."

Appellant requested a special charge, wherein the court was asked to instruct the jury that an automobile was not such a dangerous instrument as would authorize a finding that the defendant was negligent simply from the fact that he permitted his minor son to operate such automobile, and that plaintiff must further show by a preponderance of the evidence that the defendant's son was incompetent to properly and carefully operate the machine under ordinary conditions, that this fact was known to defendant and that an ordinarily prudent person would not have under the same circumstances permitted said minor to operate it. We have reviewed the charge of the court and believe it presents the law applicable to the facts, as favorably to appellant as he had a right to demand. It is not contended that an automobile is a dangerous instrument per se, when operated by a careful and competent driver, and the courts have so held frequently. McIntyre v. Orner, 166 Ind. 57, 76 N. E. 750, 4 L. R. A. (N. S.) 1130, 117 Am. St. Rep. 359, 8 Ann. Cas. 1087. But as said in Daily v. Maxwell, 152 Mo. App. 424, 133 S. W. 353:

"But no one can deny that an automobile in the hands of a careless and incompetent driver would be a dangerous machine to turn loose on busy streets and would constitute a menace to travelers."

We do not construe the charge as instructing the jury that an automobile is a dangerous instrument per se; but we are not willing to hold that a powerful, heavy machine, such as the one in question, in the hands of an 85-pound boy, not yet in his teens, speeding along the streets of a populous and busy town, may not become a menace to the lives of persons attempting to cross the street in front of it. We do not hold that an automobile is a dangerous appliance as a matter of law. They have grown to be a part of the life of the country, and, when properly handled and driven, are useful and convenient vehi-

cles. In this connection the court charges as follows:

"In order to render a parent liable for an injury caused by the negligence of his child, it is essential that it should appear from the evidence that the parent might reasonably have anticipated the injury as the consequence of permitting the child to employ the instrument which produced the injury, and it must appear that the father's negligence made it possible for the child to cause the injury complained of."

And further:

"If therefore you find and believe from a preponderance of the testimony that the defendant, R. S. Allen, permitted his son, De Course Allen, to have and drive an automobile upon the streets of Wichita Falls, at the time of the injury, and that at such time, because of the inexperience, youth, and want of fitness and ability to run such automobile at that time and place of De Course Allen, and that at such time defendant, R. S. Allen, should have anticipated that danger and injury would or was likely to result to other persons from the running of such automobile by De Course Allen, but if you further find that De Course Allen at the time and place of the injury failed to exercise ordinary care to prevent injury to plaintiff, and that such acts upon the part of R. S. Allen, in permitting him to have and run an automobile at that time and place and the manner in which he did run the automobile at the time of the injury, was negligence, as hereinbefore defined, and that such negligence on the part of both was the proximate cause of the injury, and if you further find that plaintiff was injured as charged in her petition, then you will find for the plaintiff and assess his damages as hereinafter directed."

We think this presented the issue of negligence of both parent and his son in as favorable a light as he was entitled to have it. Contention is made that the plaintiff's petition does not allege or claim that the minor, at the time of the injury, was acting in the capacity of a servant, but is predicated entirely upon the allegation that the minor was incompetent and that the defendant was negligent in permitting him to operate the car.

[7] The authorities are not in accord upon the question of the liability of a parent for permitting his minor child to operate an automobile when damages result to the person of another, by reason of the tort of the minor. It is held in Birch v. Abercrombie, 74 Wash. 486, 133 Pac. 1020, that a parent is not liable for the torts of his child solely on the grounds of this relationship; but in discussing the late authorities bearing upon the issue it is said:

"The New Jersey case, Doran v. Thomsen [76 N. J. Law, 754] 71 Atl. 296 [19 L. R. A. (N. S.) 335, 131 Am. St. Rep. 677], is not distinguishable on the facts from the case before us. The father owned an automobile, kept it on his premises, and the daughter used it with his knowledge and consent at her pleasure. While heartily subscribing to the view there expressed, 'that the mere fact of the relationship of parent and child would not make the child the servant of defendant,' we think the opinion unsound in that it ignores the agency induced by the fact, independent of that relationship, that the daughter was using the machine for the very purpose for which the father owned it, kept it, and intended that it should be used. It was being used in furtherance of the very purpose of his ownership and by one of the persons by whom he intended that purpose should be carried out. It was in every just sense being used in his business by his agent. There is no possible distinction, either in sound reason, sound morals, or sound law, between her legal relation to the parent and that of a chauffeur employed by him for the same purpose. The fact that the agency was not a business agency, nor the service a remunerative service, has no bearing upon the question of liability. McNeal v. McKain, 33 Okl. 449, 126 Pac. 742, 41 L. R. A. (N. S.) 775. In running his vehicle, she was carrying out the general purpose for which he owned it and kept it. No other element is essential to invoke the rule respondeat superior. We think that the instruction which is criticised in the Doran Case is, in itself, a complete answer to the opinion. It declared the use of the machine for the purpose for which it was owned, by the person authorized by the owner to so use it, a use in the owner's business. It seems too plain for cavil that a father, who furnishes a vehicle for the customary conveyance of the members of his family, makes their conveyance by that vehicle his affair—that is, his business —and any one driving the vehicle for that purpose, with his consent, express or implied, whether a member of his family or another, is his agent. The fact that only one member of the family was in the vehicle at the time is in no sound sense a differentiating circumstance abrogating the agency. It was within the general purpose of the ownership that any member of the family should use it, and the agency is present in the use of it by one as well as by all. In this there is no similitude to a lending of a machine to another for such other's use and purpose unconnected with the general purpose for which the machine was owned and kept. An examination of the authorities cited, and an independent search, induces the belief that the Doran Case stands practically alone. Some courts have sought on slight circumstances to distinguish it. One has frankly criticised it. We have found none which follow it. In Stowe v. Morris, 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224, the Supreme Court of Kentucky, holding a father liable on closely analogous facts, used the following language, 'In the first place, it may be said that a considerable part of the discussion of counsel is addressed to the idea that, even though the son was generally the agent or servant of the father in the operation of the car, the father is not liable under the facts stated here, because the son was engaged at the time in an enterprise of his own, the seeking and giving of pleasure to himself, his sister, and their friends upon an excursion of his own, in which the father had no interest, and which was not in the line or scope of the son's employment. The question ordinarily is a vital one in cases of this character; but it is of no consequence here, for the only ground upon which the father can be held answerable for this act of his son excludes the idea of an independent venture, under the facts detailed. That ground is, as contended for by the appellee, that the machine was bought and operated for the pleasure of the family; and that, at the time of the accident, the son was engaged in carrying out the general purpose for which the machine was bought and kept; and that, as he took it out at the time in pursuance of general authority from his father to take it when he pleased, for the pleasure of the family and himself as a member of it—the purpose for which it had been bought—he was engaged in the execution of his father's business, i. e., the supplying of recreation to the members of the father's family.' So, in the case at bar, the father had provided his family with this car as a means of recreation and amusement; and the son, in the use of the car for that purpose, was not performing an independent service of his own, but was carrying out what, within the spirit of the matter, was the business of the father. * * * In Marshall v. Taylor, 168 Mo. App. 240, 153 S. W. 527, it is said: 'But

further we held that the use of the car by the minor son for his own pleasure and with the consent of his father, the owner, was one of the uses for which the vehicle was kept and therefore was a part of the service for which the owner had authorized the boy to run the car as his servant. The only difference between that case and this is that here the young man had attained his majority, was sui juris, and his father owed him no duty of parentage, and, of course, was under no obligation to provide him with means of pleasure and recreation. We do not think this fact is determinative of the question of defendant's liability. The real question at issue is, not that of the legal duty defendant owed his son, but is whether or not the son was the agent of his father in running the car. Frequently fathers continue not only to support their children after the latter have become sui juris, but to provide them, as members of the family, with the means of recreation and pleasure. This car was provided by defendant for the use of his immediate family. He contemplated and intended that his son should enjoy it in common with other members of the family. When in such use it was as much in his service as it would have been had it been occupied by his wife, his daughter, his mother, or his guest. We conclude that the young man was not a mere servant using his master's vehicle for his own purpose, but was the agent of his father operating the car for one of the purposes of its intended use.' In McNeal v. McKain, supra, another case of the same character, the court said: 'Vehicles and motor cars may be used, not only for the business of the master for profit, but also in his business for pleasure. If Paul, the minor son of the plaintiff in error, had been driving his father's carriage (whilst he was a member of his family) in which were contained his sister and a guest of his father's house, the same being done by him with the express or implied consent of his father, the relation of master and servant would exist, and the father would be liable for the negligent acts of the minor son whilst engaged in the driving of the carriage, and the same rule is supported by authority as to motor cars.' * * * We think that, both on reason and authority, the daughter in the present instance should be held the agent of her parents in the use of the automobile. Any other view would set a premium upon the failure of the owner to employ a competent chauffeur to drive an automobile kept for the use of the members of his family, even if he knew that they were grossly incompetent to operate it for themselves. The adoption of a doctrine so callously technical would be little short of calamitous."

In Daily v. Maxwell, 152 Mo. App. 415, 133 S. W. 351, the Kansas City Court of Appeals said:

"Where a chauffeur, either with or without his master's consent, uses the machine for his own business or for his own pleasure, and negligently inflicts injury on another, the master cannot be held liable, for the reason that the negligent act, being entirely outside the scope of the servant's employment, cannot call into action the rule of respondeat superior. The fact of consent is material only in the solution of the issue of whether or not the use of the machine was, in fact, on business of the master. Cunningham v. Castle [127 App. Div. 580, 111 N. Y. Supp. 1057], supra. Should we regard the relationship between the two defendants merely as that of owner and chauffeur—master and servant—the owner should not be held liable for the negligence of the chauffeur, since the evidence shows beyond question that the latter was using the machine merely for his own pleasure. But Ernest was more than a mere chauffeur. He was the minor son of the owner and was using the car for his own pleasure, it is true but with the permission of his father and for one ȣ the very uses for which his father kept the vehicle. The evidence discloses that the machine was devoted to the use of the family of which Ernest was a member. It was a pleasure vehicle, and, when used for the pleasure of one of the minor' children of the owner, how can it be said that it was not being used on business of the owner? It is the practice of parents to provide their children healthful and innocent amusement and recreation, and certainly it is as much the business of parentage to supervise and control the pleasures of their children as it is to give them nurture and education. Had Ernest been taking his mother for a pleasure ride instead of taking some of his young friends, no one would contend that he was not on his father's business; or, had he been using the car on an errand of his own, such as shopping for himself, or going to school, he would have been on his father's business, since it was the duty of his father to support and educate him. The rule that a father is not liable for the torts of his minor child applies only to cases where the tort is committed without the consent of the parent and without the scope of any duty he owes his child. We conclude that, in running the car with the consent of his father and within the scope of family uses, Ernest was the agent and servant of his father."

No question is raised in this case as to the right of the boy to use the car at his pleasure and with his father's consent. The evidence shows that by permission of his father he purchased the car from Will Brown; that it was kept at a garage; that his father paid the bills and the boy had unlimited authority to call for the car at any time, day or night, and to use it not only within the city limits, but in making excursions across the country to other towns; and that his mother and father frequently accompanied him on such trips. The father testified that he arranged with the garage owner for the boy to have the car whenever he wanted it and paid all the bills and stated that whatever the boy did was right. While the boy was away at school for a few weeks, the car was cared for by the father and upon his return was delivered to him. We think the authorities quoted above announce the correct rule of liability and they are cited and adopted as announcing the law applicable to the facts of this case.

[8] Appellant insists that there is nothing in the record to show that De Course Allen was incompetent or reckless, and that the uncontroverted evidence shows him to have been a careful and prudent driver. We think that the testimony of Sherrod and of several of the witnesses, who described the boy's conduct and management of the car at the time of the accident, and the admissions of the boy himself, to the effect that he was excited when he saw the danger the ladies were in, and that he just had a faint recollection of it, is sufficient for this purpose, and his father must be held to have known that a boy in his twelfth year, and with only a few months' experience, was inclined to be venturesome when intrusted with a vehicle of this kind on the public streets, and that danger necessarily attended his use of the car under such conditions. Thoughtlessness of youth is proverbial, and the reckless, care-

less disposition of the average boy has always been a matter of common knowledge. The Greek word for "boy" also means "a fool," and the Hebrew word which means boy is translated "darkness," to indicate that youth is a dark and dangerous age. Very little evidence along this line was necessary to sustain the plaintiff's case. The court did not err in refusing the peremptory instructions in favor of the defendant. The courts have gone no further than to hold that an automobile is not per se a dangerous instrument in the hands of a competent driver. In McIntyre v. Orner, supra, the court qualified this nondangerous per se doctrine with the significant words, "when managed by an intelligent and prudent driver." To the same effect is the language of the court in Daily v. Maxwell, 152 Mo. App. 424, 133 S. W. 353. As heretofore stated, the judgment is, in our opinion, not excessive.

While there are some verbal inaccuracies in the language of the charge, and while the criticisms made by appellant are in some instances tenable, the charge as a whole was a fair presentation of the case, and no such error is pointed out as would justify us in reversing the judgment.

Believing that a proper judgment has been entered, it is affirmed.