## MAT MARSHALL, Respondent, v. JOHN N. TAY-LOR, Appellant.

### Kansas City Court of Appeals, February 3, 1913.

1. **NEGLIGENCE: Automobiles: Compromise.** Plaintiff seeks to recover damages for personal injuries inflicted on him, and damages to his horse, wagon, and harness. The defendant's automobile was driven by his son, the only occupant of the car, when he came up behind the plaintiff's wagon, and in attempting to pass, the right rear wheel of the car struck the left front wheel of the wagon. Plaintiff was thrown out and injured, and his horse ran away, damaging the wagon and harness. The trial court allowed the plaintiff's counsel, over the defendant's objection, to state an offer of compromise in the presence of the jury. *Held*, this was reversible error.

2. ———: ———: ———: **Road Rules: Issue of Fact.** The question as to whether or not the plaintiff violated the road rules as provided in the Laws of Missouri, 1911, page 327, is an issue of fact and not of law.

3. ————: **Master and Servant: Burden of Proof.** When a party contends that his own son was not acting as chauffeur for him at the time the accident occurred, but had become *sui juris*, the burden rests upon that party to show that he was not his servant.

4. ————: **Evidence: Witnesses.** The question of whether the autoist had sufficient space in which to execute the attempted movement and exercised reasonable care were issues of fact raised by the pleadings and evidence and the witnesses should not have been permitted, as they were, to invade the province of the jury in solving them.

5. ————: ————: **Efforts of Compromise: Public Policy.** All confidential overtures of pacification, or other propositions between litigating parties, stated to be without prejudice, are excluded on grounds of public policy.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED.

*N. T. Gentry* for appellant.

*Stephens & Collier* for respondent.

JOHNSON, J.—This is an action, commenced March 2, 1912, in the circuit court of Boone county for the recovery of damages plaintiff alleges he sustained in consequence of a collision between his wagon and an automobile owned by defendant. The petition alleges that the collision was due to the negligence of defendant's son who was operating the automobile and that plaintiff's damages resulted from personal injuries inflicted on him and from injuries to his horse, wagon and harness. The answer in substance is a general denial and a plea of contributory negligence. A trial of the cause to a jury resulted in a verdict and judgment for plaintiff and after his motions for a new trial and in arrest of judgment were overruled, defendant brought the case here by appeal.

Plaintiff, a negro, was driving east on Broadway, a paved street, and was approaching the intersection of Third street when defendant's automobile, driven by his son, who was the only occupant, overtook plaintiff's wagon and in passing collided with it. There was a deep snow on the street but there was a well-beaten wagon path near the middle of the pavement and plaintiff kept his horse and wagon in the beaten road and did not attempt to turn out towards the right though warning of the coming of the automobile was given by the sounding of the horn. Plaintiff states he did not hear the horn on account of the noises made by his wagon and did not know of the approach of the automobile until the instant of the collision. The driver of the car, when he overtook the wagon, attempted to pass around it on the north side and in completing the movement turned into the beaten road ahead of the wagon to avoid, so he says, a pile of stones on the north side of the pavement. He cut in too close and the right rear wheel of the car struck the left front wheel of the wagon. Plaintiff was thrown from his seat into a pile of snow. His horse ran away and smashed the wagon and damaged the harness.

Defendant introduced in evidence an ordinance of the city prescribing "rules of the road." This ordinance contains the provisions of paragraph 3, section 8, of an act relating to motor vehicles, passed by the Legislature in 1911 (see Laws of Missouri, 1911, page 327). The rules thus prescribed are as follows:

"Whenever a person operating a motor vehicle shall meet in a public highway any other person riding or driving a horse, or horses, or other animals of any other vehicles, the person so operating such motor vehicle shall reasonably turn the same to the right of the center of such highway so as to pass without interference. When any such person so operating a motor vehicle shall overtake any such horse, animal

or other vehicle, the rider or driver of such horse, animal or other vehicle, shall, as soon as practicable, turn aside to the right so as to allow free passage on the left hand side. Any such person so operating a motor vehicle shall, at the intersection of public highways, keep to the right of the intersection of the centers of such highways when turning to the right and pass to the right of such intersection when turning to the left.''

Counsel for defendant argue that the demurrer to the evidence asked by defendant should have been sustained on the ground that the violation of the statute and ordinance by plaintiff which, obviously, was at least a contributory cause of his injury, precludes his recovery notwithstanding the driver of the car may have been negligent in the manner in which he attempted to pass around the wagon. We think the issue of whether or not plaintiff was guilty of an infraction of these rules of the road or was negligent in not turning to the right to allow the car to go by, is presented by his evidence as one of fact for the jury to determine. The inference is reasonable that his wagon which was old and dilapidated made a great deal of noise which with the added noise of the wheels crunching in the snow prevented him from hearing the horn, if, in fact, it was sounded. The statute contemplates and requires the driver of the wagon not to keep looking back in anticipation of being overtaken by a motor vehicle traveling in the same direction, but to act with reasonable diligence to give free passage to such vehicle on being informed of its approach behind him. If plaintiff did not know of the approach of the car and was in a situation where such lack of knowledge was compatible with due care on his part, he should not be held guilty of a violation of the statutory rules of the road or of contributory negligence. We repeat that the characterization of his

conduct is presented by his evidence as an issue of fact and not of law.

That the evidence of plaintiff tends to accuse the chauffeur of negligence is not a debatable proposition. Realizing, as he did, that plaintiff was not going to turn to the right, he had no business running into a place where a collision with the wagon was unavoidable. The obstruction to his course, offered by the pile of stones in the street, gave him no excuse for injuring plaintiff. There was nothing to prevent him from stopping his car; he was not compelled to turn in ahead of plaintiff when he could see or should have seen that such movement could not be executed in safety. The fact is that he needlessly and heedlessly subjected plaintiff to risk of injury on the mere chance that he might be able to clear the wagon on "a close shave." To speculate and sport with the safety of another in such fashion is negligence, to say the least.

But it is argued that defendant should be exonerated from liability for the negligence of the chauffeur for the reason that the latter was using the car for a purpose of his own and not as the servant of defendant. The evidence on which this position is founded consists of the testimony of the chauffeur who, as stated, is the son of defendant. The automobile was kept by defendant for the use and pleasure of his family of which it appears the son, who was twenty-one years old, was a member. The young man was not employed by his father as a servant for hire to run the car, but had performed the duties of a chauffeur for the family and was permitted to use the machine for his own pleasure and convenience as well as in the service of other members of the family. He testified: "I was running the car myself and came down town on it to keep from walking; nobody was with me." He does not explain whether he came down town on his own affairs or on some business of his

father or of some other member of the family for whose use the machine was provided.

In the recent case of Dailey v. Maxwell, 152 Mo. App. 415, we dealt with a case where the minor son of the owner of the car was the family chauffeur but on the occasion in question was using it for his own pleasure. We recognized the rule that the owner of the automobile, who was not present at the injury, cannot be held liable except it be shown that the person in charge not only was his servant and agent but at the time was engaged in the business of his service. But further we held that the use of the car by the minor son for his own pleasure and with the consent of his father, the owner, was one of the uses for which the vehicle was kept and, therefore, was a part of the service for which the owner had authorized the boy to run the car as his servant.

The only difference between that case and this is that here the young man had attained his majority, was *sui juris,* and his father owed him no duty of parentage and, of course, was under no obligation to provide him with means of pleasure and recreation. We do not think this fact is determinative of the question of defendant's liability. The real question at issue is not that of the legal duty defendant owned his son, but is whether or not the son was the agent of his father in running the car. Frequently fathers continue not only to support their children after the latter have become *sui juris,* but to provide them, as members of the family, with the means of recreation and pleasure. This car was provided by defendant for the use of his immediate family. He contemplated and intended that his son should enjoy it in common with other members of the family. When in such use it was as much in his service as it would have been had it been occupied by his wife, his daughter, his mother or his guest. We conclude that the young man was not a mere servant using his master's vehicle for

his own purpose but was the agent of his father operating the car for one of the purposes of its intended use.

Aside from what we have just said, we may add that in proving the car was the property of defendant in charge of his chauffeur, the evidence of plaintiff tends to show that the chauffeur was acting in the line of his employment. As is well said by the St. Louis Court of Appeals in Shamp v. Lambert, 142 Mo. App. l. c. 575:

"The admission of the defendant to the effect that it was his automobile and that his chauffeur was in charge of the same at the time of the injury, of course tends to prove that the chauffeur was acting in the line of his employment, for if he was defendant's chauffeur then his duties were to operate defendant's automobile. We believe this testimony is sufficient for the prima facie purposes of the case; for how could plaintiff prove the particular trip to the station by the chauffeur and automobile was authorized by defendant? If, as a matter of fact, the chauffeur was not acting for the defendant at the time, the burden rested with him to show to the contrary, after plaintiff had shown so much."

The mere statement of defendant's son that he was using the car because he did not wish to walk should not be accorded any greater evidentiary weight than that of raising an issue of fact with the evidence of plaintiff which, as stated, tends to show that the car was in the service of defendant at the time of the injury. The demurrer to the evidence was properly overruled.

During the trial counsel for plaintiff, over the objections of defendant, was permitted to ask questions on the direct examination of witnesses of which the following is a fair sample: "Q. At this point of collision, was there room for him (the autoist) to have passed, (plaintiff's wagon) using ordinary care,

on the north side?'' The answers of the witnesses were in the affirmative. These questions should not have been allowed. They called for mere opinions about a matter that could not properly be considered a subject for opinion evidence. The questions of whether the autoist had sufficient space in which to execute the attempted movement and exercised reasonable care were issues of fact raised by the pleadings and evidence and the witnesses should not have been permitted, as they were, to invade the province of the jury in solving them. The admission of the evidence was prejudicial error. [Thompson v. Livery Co., 214 Mo. l. c. 499; Kallher v. Parker, 155 Mo. App. l. c. 375; Heberling v. Warrensburg, 133 Mo. App. l. c. 547; Lawson on Expert and Opinion Evidence, p. 1; 1 Greenleaf on Evidence, sec. 441.]

When plaintiff was on the stand his counsel asked him questions about an attempt defendant had made to compromise the case. Defendant objected and the court required plaintiff's counsel to state outside of the hearing of the jury just what he desired to prove. Wherepon counsel offered to prove ''that a lawyer by the name of Daily, some two weeks prior to the trial of this case, went down to the home of plaintiff and wanted plaintiff to come to his office the next day; that plaintiff went to his office and there Daily wanted to pay him some money, if plaintiff would dismiss his case, and then and there pulled out a pint of whiskey and gave him a drink, and before leaving there, tried to get plaintiff to drink some more whiskey. That plaintiff was then taken to defendant's music store and there Daily gave the plaintiff another drink of whiskey and while there the defendant offered to give plaintiff a check for twenty-five dollars and take his receipt in full payment for any and all injuries on the account of this accident.''

This was a clear attempt to prove an offer of compromise and the court properly sustained defendant's

objection but followed this correct ruling by one permitting counsel for plaintiff, over the objection of defendant, to restate the offer in the presence and hearing of the jury. The court again sustained the objection to the evidence on the ground that it was an attempt to prove an offer of compromise as, obviously, it was.

The law strongly favors the settlement of disputes outside of court and to that end seeks in every way to encourage disputants to get together and compromise their differences. Courts realize that often a party to a controversy, though confident of the justice of his position, would rather buy peace than engage in litigation. But no prudent man would dare approach his adversary with an offer of compromise if he thought his adversary would be allowed to take advantage of his offer in court and exploit it as a confession of weakness. To allay such fear the courts have always denounced every attempt to prove an offer of compromise or to get before the jury the fact that such offer was made.

"The rule of law is that all confidential overtures of pacification, or rather propositions between litigating parties, stated to be without prejudice, are excluded on grounds of public policy; and the reason of the rule is that, unless so excluded, it would be difficult to take any step towards an amicable compromise or adjustment." [Ferry v. Taylor, 33 Mo. l. c. 333; Smith v. Shell, 82 Mo. l. c. 220; Sterrett v. Railroad, 225 Mo. l. c. 115; Huetteman v. Viesselman, 48 Mo. App. l. c. 589; Mill Co. v. Ins. Co., 59 Mo. App. 204; Rusher v. Aurora, 71 Mo. App. l. c. 424; Herman v. Railroad, 77 Mo. App. 380; Cullen v. Insurance Co., 125 Mo. App. 412.]

There was no good reason for permitting plaintiff to repeat his offer in the hearing of the jury. It was already in the record and plaintiff's exception to the ruling excluding the offer also was in the record.

Plaintiff could have had no other motive in repeating it than that of advising the jury that defendant had been trying to compromise the case. He wished to prejudice the jury against defendant and we must assume that his desire was accomplished and that the jury were duly impressed to the injury of defendant. Trial courts should sternly repress such efforts to get improper and prejudicial matter to the jury under the guise of an offer of proof which, if made to the record, should be made out of the hearing of the jury.

For these errors the judgment is reversed and the cause remanded. All concur.