BERTIE A. HAYS, Appellant, v. R. S. HOGAN and J. E. HOGAN, Respondents.

Springfield Court of Appeals, April 28, 1914.

1. VERDICT: Ambiguity in: Duty of Trial Court to Correct. A verdict which read "at the sum of $6500., six thousand $5.00" was ambiguous as to the amount above $6005 and should have been corrected by the trial court before judgment was entered.

2. AUTOMOBILES: Ownership in Father: Operation by Son to Injury of Another: Presumption of Consent. In an action against a father and son for injuries resulting in the death of plaintiff's husband occasioned by the negligent operation of an automobile by the son, it being conceded that the father was the owner of the machine, the presumption arose that the son was using it with the father's consent and the burden was cast upon the father to prove that such consent was not given the son.

3. ———: ———: ———: Consent: Liability. Action by a widow for the death of her husband occasioned by the negligent operation of the defendant father's automobile by defendant son. Evidence reviewed and considered sufficient to warrant a finding that the son was using the machine with the consent, implied at least, of the father.

4. ———: ———: ———: Relation of Master and Servant. An adult son, living with his father as a member of the family, used the father's automobile, purchased for general family use, with the father's consent, express or implied, on a trip purely for the pleasure of the son and in no way connected with the business of the father. *Held* that the relation of master and servant existed and the father was liable for any negligent act of the son while so using the machine.

5. ———: Negligent Operation: Death From: Measure of Damages. In an action by the widow for the death of her husband occasioned by the negligent operation of the defendants' automobile, an instruction on the measure of damages examined and approved.

6. ACTIONS: Based on Statute: Constitutionality Questioned: Waiver. In an action based on a statute where, even granting that the petition did not properly disclose the character of the action, yet it was shown by the instructions, and where defendants for the first time raised the question of the constitutionality of the statute in the motion for a new trial, *held* that such question had been waived.

On Motion for Rehearing and Motion to Certify to Supreme Court.

7. AUTOMOBILES: Ownership: Negligent Operation: Prima-Facie Case. In an action against a father and son for the death of plaintiff's husband occasioned by the negligent operation of the defendant father's automobile by the defendant son, where the ownership of the car was admitted to be in the father and the evidence showed that all the persons in the car at the time of the accident were employees of the institution of which the father was president and that the negligent operation of the car was the cause of the injury and that de-

fendant son had on numerous occasions operated the car with the father's consent a prima-facie case of liability against the father was established. [Per FARRINGTON, J.]

8. ———: **Injury from Negligent Operation by one other than Owner: Presumption.** Where plaintiff has suffered an injury or damage from the negligent operation of a vehicle, it is sufficient prima-facie evidence that the negligence was imputable to the defendant to show that he was the owner of the vehicle, without proving affirmatively that the person in charge of the vehicle was the defendant's servant. It lies with the defendant to show that the person in charge was not his servant and that the injury was occasioned by the fault of one for whose negligence the owner would be liable. [Per FARRINGTON, J.]

Appeal from Greene County Circuit Court.—*Hon. Arch A. Johnson,* Judge.

REVERSED AND REMANDED (*with directions*).

TRANSFERRED TO SUPREME COURT.

*Wilfley, Wilfley, McIntyre & Nardin* and *O. L. Haydon* for appellant.

(1) A verdict of the jury, if intellgible and of clear meaning, will not be set aside on account of mere imperfections or irregularities. Ryors v. Prior, 31 Mo. App. 555; Gurley v. O'Dwyer, 61 Mo. App. 348; Musser v. Adler, 86 Mo. 450; Purver v. Koontz, 138 Ind. 252; Shaeffer v. Railroad, 98 Mo. App. 445. (2) The verdict in the case at bar is, on the record, without ambiguity, and clearly shows that the verdict agreed to by the jury and returned into court was a verdict for six thousand five hundred ($6500) dollars. State v. Underwood, 57 Mo. 52; State v. Rush, 95 Mo. 206; Devoy v. Transit Co., 192 Mo. 219; Hamburg-Bremen, etc., Co. v. Pelzer Mfg. Co., 76 Fed. 481; Capon v. Stoughton, 16 Gray, 364; West, Adm., v. Bank, 63 Ga. 320; Hemkin & Palmers v. Barbrey, 40 Ga. 252; Mattocks v. United States, 146 U. S. 148; Davis v. Heber

Mfg. Co., 119 Iowa 56; Jackson v. Dickinson, 15 Johns. (N. Y.) 309; Peters v. Fogarty, 55 N. J. Law 386; Dalrymple v. Williams, 63 N. Y. 360; Wolfgren v. Town of Schoepke, 123 Wis. 19.   (3) Where one owns and maintains an automobile for the use and pleasure of himself and his family and an injury is inflicted through negligence of the person in charge of the automobile and while engaged in the use for which the machine is kept, the owner is liable.   Winfrey v. Lazarus, 148 Mo. App. 388; Daily v. Maxwell, 152 Mo. App. 422; Marshall v. Taylor, 168 Mo. App. 240; McNeal v. McKain, 126 Pac. (Okla.) 742, 41 L. R. A. (N. S.) 775; Moon v. Matthews, 227 Pa. 488, 29 L. R. A. (N. S.) 856; Stowe v. Morris, 147 Ky. 386, 144 S. W. 52.

*Green & Green, W. J. Orr, J. D. Brooks, Hamlin & Seawell* and *Lewis Luster,* for respondents.

(1)   The verdict of the jury is uncertain and ambiguous, and the trial court was justified in arresting the judgment, and granting a new trial because of the ambiguous verdict; and after the jury is discharged the court is not authorized to amend the verdict to conform to what he believes to be the intention of the jury, and the appelate court certainly could not assume such power.   Newton v. Railroad, 168 Mo. App. 199; Haumuller v. Ackerman, 130 Mo. App. 387; Gaither v. Wilmer, 5 L. R. A. 757; Dyer v. Combs, 65 Mo. App. 148; Poulson v. Collier, 18 Mo. App. 604. (2)   The statute relating to motor vehicles, as enacted by the Legislature of 1911, and found on page 322 of Session Acts of 1911, is unconstitutional. Daugherty v. Thompson, 140 N. W. 615; Berry v. Motor Car Co., 141 N. W. 529; State ex rel. v. Ashbrook, 154 Mo. 375; Hannibal v. Railroad, 31 Mo. App. 334; State ex rel. v. Herman, 75 Mo. 346; State v. Granneman, 132 Mo. 326; State v. Tea & Coffee Co., 131 Mo. 634; Witzman v. Railroad, 131 Mo. 618; St. Louis v. Weitzel,

130 Mo. 616; State ex rel. v. Hedge, 135 Mo. 112. (3) Where a father purchases an automobile and maintains it as a family vehicle, with restricted uses, and a son had been cautioned not to use the car without first obtaining permission, and the son violating this injunc- tion, uses the car without permission, upon an inde- pendent pleasure trip of his own accompanied by his friends but by no other member of the father's family, the father cannot be held responsible in case the son, while negligently driving the car, causes injury. Par- ker v. Wilson, 43 L. R. A. (N. S.) 87; Riley v. Roach, 37 L. R. A. (N. S.) 834; Danforth v. Fisher, 21 L. R. A. (N. S.) 93; Cunningham v. Castle, 111 N. Y. S. 1057; Neff v. Brandeis, 39 L. R. A. (N. S.) 933; Lots v. Hanlon, 10 L. R. A. (N. S.) 202; Rannish v. Borge- necht, 144 N. Y. S. 399; Mayer v. Benedict, 108 N. Y. S. 228; Patterson v. Cates, 152 Fed. 481; Slaten v. Thresher Co., 5 L. R. A. (N. S.) 598; Stewart v. Branch, 95 N. Y. S. 161; Reynolds v. Buck, 103 N. W. 946; Doran v. Tomsen, 19 L. R. A. (N. S.) 335; Garrelzen v. Duenckle, 50 Mo. 104; Evans v. Automobile Co., 131 Mo. App. 266; Maddox v. Brown, 36 Am. 336; Broad- street v. Hall, 10 L. R. A. (N. S.) 933, and notes; Howe v. Leighton, 75 Atl. 102.

ROBERTSON, P. J.—This is an action by plain- tiff as the widow of one Mack Hays, deceased, against the defendants, father and son, to recover for the death of plaintiff's husband on account of the negli- gence of J. E. Hogan, the son, in operating an automo- bile on one of the public highways of Howell county, causing a team to run away with a wagon in which the plaintiff's husband was riding, throwing him out and killing him.

A trial was had on a change of venue in Greene county before the court and a jury which resulted in a verdict (the original of which has been, as is author-

ized by section 2053, Revised Statutes 1909, submitted to and examined by us) in the following form, as near as we can give it:

"We, the jury, find the issues in favor of the plaintiff and against both defendants, J. E. Hogan and R. S. Hogan, and assess her damages at the sum of $6500 *00* six thousand $5 *00* dollars." Upon this verdict judgment was entered in the language and form thereof.

Within four days after the return of said verdict, the defendants filed their motions for new trial and in arrest of judgment, complaining, among other things hereinafter noted, of the verdict and judgment on account of its form as aforesaid. The motions were sustained and the plaintiff has appealed.

The plaintiff concedes that the verdict is ambiguous as to the amount above $6005 and we shall so treat it and direct judgment to be entered thereon for that amount, which the holding in Shaefer v. Mo. Pac. Ry. Co., 98 Mo. App. 445, 456, 72 S. W. 154, authorizes in such cases as this, irrespective of the desire of the parties to the litigation.

The trial court should not have permitted judgment to be entered on this verdict in its ambiguous form and thereby render the judgment as faulty as the verdict. Judgment should have been entered for whatever amount the court considered correct, so that in the event of no appeal, if an execution should be issued thereon, the amount mentioned therein would be certain. If the trial court under such circumstances incorrectly determines the amount which should prevail, this error can be corrected on appeal.

About one year prior to the accident the defendant, R. S. Hogan, the father, purchased an automobile for the use of himself and his family which consisted of several members, including the defendant, J. E. Hogan, and two other sons, all of whom learned to operate the machine; but the father had not learned to operate it. The defendant son had reached his major-

ity, was married, worked in the bank of which his fa-
ther was president, and lived with his father's family
at West Plains as a member thereof, paying no board.
The father testified that when he purchased the ma-
chine none of the children was to use it without his or
his wife's consent, but that at no time had any of them
been refused the use of it when requested. The defend-
ant son used the machine on many occasions prior to
the date of the accident. On May 27, 1912, the day on
which the accident occurred, the father was absent
from the county. The defendant son was working in
the bank as usual. That afternoon the machine was
left in front of the bank by the mother and at about
4:30 in the afternoon the defendant son and other em-
ployees in the bank took the automobile and went into
the country a few miles for a pleasure ride, and return-
ing home, running at a high rate of speed, they ap-
proached the wagon in which plaintiff's husband was
riding to which was hitched a team of mules headed
toward the automobile. When within a short distance
of the automobile, the mules, which had turned to the
right and out of the beaten portion of the road, began
to scare, and the plaintiff's husband, who was riding
in the rear seat, stood up in the wagon, signaled and
called to the occupants of the automobile to stop. They
did not, however, slacken their speed and as they
passed the mules lunged forward, ran away and threw
plaintiff's husband out of the wagon, injuring him so
that he died within a few minutes thereafter. We have
referred to the facts most favorable to the plaintiff, as
it is our duty to do in a case of this character, although
there is testimony to the contrary.

When the ownership of the machine was conceded
the presumption arose that when defendant's son was
using it he had his father's consent therefor and the
burden was then cast upon the father to prove to the
satisfaction of the jury that no consent was given.
[Shamp v. Lambert, 142 Mo. App. 567, 575, 121 S. W.

770; Marshall v. Taylor, 168 Mo. App. 240, 246, 153 S. W. 527.] The facts disclosed by the testimony tended strongly to prove that the son had the actual or implied consent of the father and more certainly of the mother. The machine was left standing in front of the bank, where the son was employed, having been left there by his mother and there being no showing that she intended to or did return there for it, and he was permitted without objection from any one, so far as the testimony discloses, to take it and go upon a pleasure trip with his friends and no doubt the friends of the father. Considering this case upon its merits in the light of the facts disclosed, and keeping in mind the fact that the father was the owner of the automobile, that the son was of age and resided with him as a member of his family, that the father was not operating the machine when the accident occurred but that it was being operated by the son with his implied consent at least, we have a state of facts covered in all of its phases by holdings of the other courts of appeal in this State to the effect that the father should be held liable together with the son for the injuries resulting on account of the son's negligence in so operating the machine.

The St. Louis Court of Appeals in Winfrey v. Lazarus, 148 Mo. App. 388, 128 S. W. 276, held the owner liable where the owner of an automobile was absent and the owner's daughter, who was married and lived away from her father (although at this particular time she was at her father's home occasionally looking after it during his and her mother's absence), requested her father's chauffeur to meet her at a certain point and while he was on his way to that place, by reason of his negligent operation of the machine, caused the damages therein sought to be recovered. The liability was based on the theory that the chauffeur was acting within the course of his employment as the agent and servant of the automobile owner.

Hays v. Hogan

A judgment was sustained for the plaintiff in the case of Daily v. Maxwell, 152 Mo. App. 415, 133 S. W. 351, in the Kansas City Court of Appeals, where the father and owner of the automobile was not present when the act of negligence was committed but the machine was being operated by his minor son, with his consent for the son to take some of his young friends automobile riding. ''It was the boy's party and his father had nothing to do with it except to give his son the use of the car for the pleasure of his son and his son's friends.'' It was held in that case that the son was the agent of the father and engaged at the time in the business of his service and that, therefore, the father was liable for the damages done by the son in the negligent operation of the machine. It is further said in that opinion: ''We conclude that in running the car with the consent of his father and within the scope of family uses, Ernest was the agent and servant of his father.''

In Marshall v. Taylor, 168 Mo. App. 240, 153 S. W 527, the action was to recover damages by reason of the negligent operation of an automobile by the adult son of the owner, and it was shown that when the father purchased the automobile he contemplated and intended that his son should enjoy it in common with other members of the family, and that in operating the machine for his own pleasure the son was about his father's business and his agent and servant and the father, although not present at the accident, was held liable because he had consented to the use of the machine in this manner.

The Supreme Court of Oklahoma has cited with approval some of the above cases in McNeal v. McKain, 126 Pac. 742 (Ok.), 41 L. R. A. (N. S.) 775. The Supreme Court of Alabama in Parker v. Wilson, 43 L. R. A. (N. S.) 87, has refused to follow the holding in the *Daily* case, supra. The Supreme Court of Kentucky in Stowe v. Morris, 147 Ky. 386, 39 L. R. A. (N.

S.) 244, 144 S. W. 52, and the Supreme Court of Pennsylvania in Moon v. Matthews, 227 Pa. 488, 29 L. R .A. (N. S.) 856, 136 Am. St. Rep. 902, 76 Atl. 219, have followed some of the holdings in the Missouri cases above cited. We are not inclined to criticize the doctrines contained in the decisions of our other appellate courts as applied to sustain the liability of the father under the facts here disclosed. It has been suggested in some of the authorities opposed to the doctrines announced by the Missouri decisions, and by the defendants here, that the rules there applied would necessarily lead to holding that in cases where the operation of an automobile was not involved the parent would be liable for damages caused in the negligent use of every instrumentality furnished his children for their pleasure, even though the acts complained of were committed in the absence of the parent, and to say that this rule of law should be adopted and applied to the various and varied affairs of family life would create a dangerous innovation. Without going into a detailed discussion of the question of the liability of the parent for the negligence and torts of another member of the family committed out of his presence, we think it sufficient to consider the questions here involved as not parallel to those cases in which the master is exempted from liability for acts of negligence occurring out of his presence and without his connivance, consent, approval or ratification.

The Legislature of this State has seen fit to require the owner and operator of an automobile, before he is permitted to run it upon the public highways of this State, to procure a license therefor and that he shall be amenable to certain laws regulating the use thereof, and have sought to fix the liability upon him for its use when used by him or by others with his consent. In the case of State v. Swagerty, 203 Mo. 517, 102 S. W. 483, the act concerning automobiles (Laws of 1903, p. 162) was under consideration and in sus-

taining its constitutionality it was held that, owing to the peculiar characteristics of automobiles, there partially enumerated, that a regulation of their use upon the highways was a proper subject of legislation. We think that when an automobile is provided for family use and is being used by another member of the family than the owner, but with the owner's consent, that he should not be heard to say that such other is not his agent or servant. No dangerous rule is thus established but one in harmony with and conducive to the proper recognition of the legislative enactment. No part of the legislative enactment was invoked by plaintiff except that portion thereof defining the degree of care therein which the operators of automobiles must exercise.

The defendants contend that this action is based on the statutes relative to motor vehicles and that said statute is unconstitutional. They referred in their instructions to portions of the law not relied upon by the plaintiff. The plaintiff contends that this action is based solely upon and governed by the principles of the common law, although instruction 1, given in her behalf submitted the case on the degree of care required by the statute. As to the constitutionailty of the motor vehicle law (Laws 1911, p. 322, et seq.) urged upon us, we shall speak later.

Plaintiff's instruction 1, exacted of the operator of the automobile the exercise of the highest degree of care that a very careful and prudent person would exercise under the same or similar circumstances and hypothetically submitted the question of the son being the agent and servant in and about the business of his father and using the vehicle for the purposes for which it was kept and maintained by the father.

Plaintiff's instruction II told the jury that in determining whether the son was the agent and servant of the father and acting by his authority in driving the automobile that it was not necessary for the jury to

believe that express or particular authority or direction was given therefor at the particular time and in the particular manner that the same was being used, and that if it was being used at the time of the accident within the scope of the purpose and use for which it was kept and maintained, that then the son was the agent and servant of the father.

Plaintiff's instruction III covers the question of the degree of care as referred to in instruction I and tells the jury that by the term "carelessly and negligently" is meant the failure to exercise such degree of care.

Plaintiff's instruction IV defines reasonable care as such that a reasonably prudent person would exercise under the same or similar circumstances.

Plaintiff's instruction V is as follows: "The court instructs the jury that if your verdict is for the plaintiff, you will allow her such sum as will reasonably compensate plantiff for such necessary injury, if any, as you may find and believe from the evidence plaintiff has suffered by reason of the death of her husband, provided, that you shall in no event allow her a greater sum than ten thousand dollars."

The court on its own motion gave an instruction in effect embodying some of the features contained in the instructions given in behalf of the plaintiff.

Eight instructions were given in behalf of the defendants, telling the jury that the automobile was a lawful vehicle and that the mere happening of the accident would not entitle the plaintiff to recover; that there was no testimony that the son failed to turn his machine to the right when meeting the wagon in which the deceased was riding, as required by the statutes; that the defendant son was not required to stop his automobile merely because he saw the vehicle in which the deceased was riding approaching from the opposite direction and that said defendant was only required to stop in case the mules appeared to be badly

frightened at the automobile or in case some one in the wagon signaled him to stop, so that by stopping the accident might have been prevented; that the giving of a signal or warning by an automobile is to notify other people using the highway of the approach of the automobile and that if the driver of the team discovered the approach of the automobile without such warning, then the defendant son was not under obligation to give such signal; that if the mules were frightened by the automobile and not by the manner in which it was operated or the speed at which it was going or the failure to stop the same, then the verdict should be for the defendants, or if the evidence left it in doubt as to whether the mules took fright from the manner in which the machine was operated or the failure to stop or from the sight of the machine itself, that then the verdict should be for the defendants; that even if they found that defendant son did not sound any signal or warning of approach of the automobile, before they could find for the plaintiff, on account of such failure, that they would have to find that the defendants could have given such signal and that the accident would not have occurred had the signal been given and that at the time the deceased was exercising ordinary care and prudence for his own safety; that unless they should find by a preponderance or greater weight of the evidence that the defendant son was guilty of the act or acts of negligence complained of and that the same was the direct and proximate cause of the accident, they should find for the defendant son; and also one instruction (H) on the measure of damages, as follows:

"If, under all the instructions and evidence, you find for the plaintiff, your verdict must be limited to compensation for the injury sustained by the plaintiff and you are not to allow anything for the manner of her husband's death or any pain or suffering on the part of the plaintiff, nor any sum by way of punish-

ment for the wrongful act, if you find there was a wrongful act.''

The defendants requested and were refused three instructions: (1) asking the court to charge the jury that the case was based on the negligent running of an automobile, the owner of the car not being present at the time of the accident, and that he could not be held liable except it were shown that the person in charge of the automobile not only was the agent or servant of the owner but was engaged at the time in the business of his service, in the business of his father, and that unless they so found the verdict should be for the father; (J) that if the son was at the time of the accident over twenty-one years of age and driving the automobile for his own pleasure or business and not on account of any business or pleasure of the father, then the father could not be held in any wise responsible for the accident and the verdict should be in his favor; and (K) that if the father had cautioned and directed his son never to use the automobile without first obtaining his or his wife's permission, and that at the time of the accident the said son was using the automobile without first having obtained permission of either of them, that then the jury should find for the father.

The instructions given embodied all of the material issues made by the pleadings.

The defendants complain of plaintiff's instruction V on the measure of damages and insist that there is no testimony to sustain a verdict for more than nominal damages in behalf of the plaintiff. They cite the case of McGowan v. Steel Co., 109 Mo. 533, 19 S. W. 199, which has been overruled by Browning v. Railway, 124 Mo. 55, 71, 27 S. W. 644, and Minter v. Bradstreet Co., 174 Mo. 444, 493, 73 S. W. 668, and which was recognized by the court in the case of Haymaker & Crookshanks v. Adams & Son, 61 Mo. App. 581, 586, as being so overruled. In the latter opinion, in which this reference is made, the case of Goss v. Railroad, 50 Mo.

App. 614, is overruled. The defendants, however, cite one case (Parsons v. Mo. Pac. Ry. Co., 94 Mo. 286, 296, 6 S. W. 464), in support of their opposition to plaintiff's said instruction and in support of their nominal damage theory that clarifies the whole situation, so far as that theory is concerned. That case involved an action by a father for the wrongful death of his minor son. It appears that no proof was made of the value of the son's services or the possible burden of his support, but it is said that they may be measured by the experience and judgment of the jury, enlightened *only* by a knowledge of the age, sex and condition in life of the deceased, and the parent is not restricted to the recovery of merely nominal damages because the value of the services of the child or the amount of expenses incurred or paid and other necessaries during illness be not proven. "An intelligent jury, from common experience, may determine, approximately, in any given case, what amount would compensate a parent for all pecuniary losses sustained by reason of the death of a minor child. . . ." The opinion in that case was cited with aproval in Sharp v. National Biscuit Co., 179 Mo. 553, 560, 78 S. W. 787, which also cites with approval the case of Nagel v. Railroad, 75 Mo. 653, 665, wherein an instruction, so far as the elements complained of in the case at bar, as to plaintiff's instruction I, are concerned, was approved. In the case of Ogan v. Railway, 142 Mo. App. 248, 254, 126 S. W. 191, an instruction similar to the one complained of here was approved.

The testimony in the case at bar shows that the plaintiff's husband, at the date of his death, was fifty-seven years of age, owned his farm upon which he was living and that he did all of the ordinary work as other people, although he used a wooden leg secured by straps around his knee and waist; that he had been married thirty-five years, had eight children and had supported them and his wife. We, therefore, rule

againt the appellants on their contentions that the jury should have returned a verdict for only nominal damages and that plaintiff's instruction V is not erroneous, especially in the view of defendants' instruction H.

The defendants in their motions for new trial and in arrest of judgment for the first time insisted that the act concerning motor vehicles (Laws 1911, p. 322) is unconstiutional for the reason that it violates Section 28, Article 4 of the Constitution of this State, in that the title to the act contains more than one subject and because the subjects embraced and covered by the act are not clearly expressed in the title thereof, because said act is special and class legislation and discriminates against the owners and operators of automobles, deprives defendants of their property without due process of law and fails to secure to them equal protection of the law, particularly in violation of Sections 4, 20 and 30 of Article 2 of the Constitution of the State of Missouri; and in that it violates said Sections 4, 20 and 30 and is special and class legislation and discriminates against automobiles and the owners and operators thereof in favor of similar motor vehicles, to-wit: fire wagons, police patrol wagons, ambulances, road rollers, traction engines, etc., and also because it violates Section 1, of Article 14, of the Amendments to the Constitution of the United States in that it abridges the privileges and immunities of citizens of the United States, and because the effect of said act will result in depriving persons, especially automobile owners and operators and these defendants of their property without due process of law and deprive them of the equal protection of the law; and because it violates said Sections 4, 20 and 30 of said Article 2 of the Constitution of the State of Missouri for the same reasons.

If, as the defendants now contend, the action is based upon the statute then their alleged constitutional rights were invaded when the suit was commenced, and

if the character of the action was not disclosed by the petition it was disclosed, giving them the benefit of the most liberal construction, by the instructions to the jury. Our Supreme Court in the case of Hartzler v. Met. Street Ry. Co., 218 Mo. 562, 564, 117 S. W. 1124, held that under such circumstances the motion for a new trial was not the first door open for the constitutional question to enter and that, therefore, it should be held to be waived. Other decisions are of the same import. [Lohmeyer v. Cordage Co., 214 Mo. 685, 689, 113 S. W. 1108; State v. Gamma, 215 Mo. 100, 103, 114 S. W. 619; Milling Co. v. Blake, 242 Mo. 23, 31, 145 S. W. 438; George v. Railroad, 249 Mo. 197, 155 S. W. 453.] Defendants insist that it necessarily follows that if plaintiff's action is based upon the statute that at no time did the plaintiff have a cause of action stated and that, therefore, the question can be raised at any time; but we are unable to conceive of any reason for making a different application of the rule requiring diligence in raising these questions in a case where it is apparent upon the petition and in any other case, because, if it is a matter that can be waived, is seems that it should be held to make no difference as to how the question arises. It is a question of diligence in taking advantage of the first opportunity offered therefor and the cases last above cited, which are the latest rulings of the Supreme Court upon the question, are controlling upon us in holding that irrespective of how the question arises the defendants can waive it.

The judgment is reversed and the cause remanded with directions to set aside the order granting the defendants a new trial and to enter judgment upon the verdict for six thousand and five dollars. *Farrington* and *Sturgis, JJ.,* concur.

ON MOTION FOR REHEARING AND MOTION TO
CERTIFY TO THE SUPREME COURT.

FARRINGTON, J.—I think the motions for re-
hearing and to certify the cause to the Supreme Court
should be overruled because I believe the result reached
in the opinion of the court already on file is the correct
solution of the questions presented to us, not only for
the reasons therein set forth, but the reasons herein
given as well.

We do not disagree as to the proposition of law
that one cannot be held as master and liability fastened
upon him as such for the acts of a third person unless
such third person can be said to be his agent or servant.
If J. E. Hogan was not the servant of R. S. Hogan,
acting within the real or apparent scope of his author-
ity, of course R. S. Hogan could not be held; but as I
view the evidence, under the authorities there was suffi-
cient evidence to justify the jury in fastening this re-
lationship upon these parties.

It is admitted that the automobile that caused the
injury belonged to the defendant, R. S. Hogan; and the
evidence was such as to amply justify the jury in find-
ing that the automobile at the time and place in ques-
tion was being negligently operated by defendant, J.
E. Hogan, to the damage of the plaintiff. We have
then the case before us upon the following facts which
are either admitted or a prima-facie showing of the
same made: R. S. Hogan was the owner of the auto-
mobile. It was being operated along a public road, and
was therefore being used for the purpose for which an
automobile was intended, and every person in the car
at the time of the injury was an employee of the in-
stitution of which R. S. Hogan was presiding officer.
It was being negligently operated, and such negligence
was the proximate cause of the injury in question.
This, upon reason and authority, makes a prima-facie
case of liability, against the owner, R. S. Hogan. It

matters not, under the facts in this case, whether the person operating the automobile was the adult or minor son of R. S. Hogan, or an entire stranger to him so long as the jury was warranted in finding that he was not a trespasser and had sufficient evidence before it upon which to support the finding that he was the servant and agent of R. S. Hogan.

The principle which I think conclusively determines this case is well stated in Shearman & Redfield on the Law of Negligence (6 Ed.), Vol. 1, Sec. 158, as follows. "When the plaintiff has suffered injury from the negligent management of a vehicle, such as a boat, car or carriage, it is sufficient prima-facie evidence that the negligence was imputable to the defendant, to show that he was the owner of the thing, without proving affirmatively that the person in charge was the defendant's servant. It lies with the defendant to show that the person in charge was not his servant, leaving him to show, if he can, that the property was not under his control at the time, and that the accident was occasioned by the fault of a stranger, an independent contractor, or other person, for whose negligence the owner would not be answerable." With ownership of personal property goes possession and control, and the natural inference arises that wherever such property is found it is in the possession and under the direction and control of the owner either actually or constructively. The same doctrine is announced in Norris v. Kohler, 41 N. Y. 42; Seaman v. Koehler (N. Y.), 25 N. E. 353; Doherty v. Lord, 28 N. Y. Supp. 720; Thiry v. Taylor B. & M. Co., 56 N. Y. Supp. 85; Perlstein v. American Exp. Co. (Mass.), 59 N. E. 194.

This question was ably and thoroughly discussed in the case of Fleishman v. Polar Wave I. & F. Co., 148 Mo. App. 117, 127 S. W. 660, where Judge GOODE holds that perhaps proof of the name on the wagon alone would carry the case to the jury on the issue of defendant's liability, citing and discussing many authorities.

In our case, the facts are sufficient to justify the jury in finding that J. E. Hogan was operating the automobile as the servant of R. S. Hogan. It is true, the defendants' evidence tends to show a different conclusion, but the jury did not believe that the evidence offered by the defendants to the effect that the relation of master and servant did not exist was sufficient to overcome the plaintiff's prima-facie case. However, plaintiff has much more to rely upon than the bare prima-facie case made showing the ownership of the automobile to be in R. S. Hogan. The latter admitted that on a number of occasions he had given his son, J. E. Hogan, permission to run the car, and that he could not remember an occasion when a request was made and refused. That some one had to operate the car besides the owner is apparent because the owner admitted that he had never learned to run it; and he swore that he and his wife were the only ones who could give permission to the defendant, J. E. Hogan, to run the car. The automobile was left by R. S. Hogan's wife, on the day of the accident, in front of the place where the son, J. E. Hogan, worked, and it was at this place that he commenced to operate it.

This question has recently been passed on by our Supreme Court in the case of O'Malley v. Heman Construction Co. (not yet officially reported), 164 S. W. 565, where, in the course of the opinion, this language appears: "There being sufficient evidence to warrant a finding of defendant's ownership of the wagon, it was not necessary for plaintiff to show affirmatively that the driver was defendant's servant. This question is well considered in Fleishman v. Ice & Fuel Co., 148 Mo. App. 117, 127 S. W. 660. The same decision answers the suggestion relative to the evidence that the driver was acting within the scope of his employment."

Unless the law of this State is to be completely overturned, the plaintiff in this case must be held to

have introduced sufficient evidence to make a prima-facie case against both defendants; and the jury disbelieved the evidence offered by the defendants and found in favor of the plaintiff. If there was sufficient evidence to take the case to the jury, there is sufficient evidence to sustain the verdict. It is true, the case was argued here along the lines discussed in the opinion already on file; but the issue presented by the plaintiff's principal instruction requiring the jury to find that the car was being operated by a servant or. agent of R. S. Hogan was broad enough to cover the theory which I have advanced in this opinion, and there was sufficient evidence to sustain a finding upon this theory, and it therefore cannot be said that I am seeking to sustain the verdict on a theory not submitted to the jury simply because I believe the judgment was for the right party.

Speaking for myself, I differ with many of the courts which hold that an automobile is not a dangerous instrumentality. "A dangerous instrumentality" is ordinarily attached as a name to those angencies which are propelled by some powerful force, or in which some destructive force is stored up, which force is to be controlled by human hands, and which, when not kept under proper control, is calculated to deal death and destruction to those who come within the danger zone. It requires but a glance at the daily newpapers to convince one that death and destruction are constantly resulting from the operation of automobiles. And, recognizing this, I think our General Assembly has classified the automobile as a dangerous instrumentality by statutory enactment. [Laws 1911, p. 330 (9).] This was done, perhaps, because the Legislature thought it necessary to protect others of the traveling public against the use of a vehicle containing within itself such a power that by the mere shift of a few notches of the throttle it can be made to run from

six to sixty miles an hour along the streets and highways which were laid out and designed to safely and conveniently take care of vehicles drawn by the ass and the ox. Wherever the Legislature or the courts have said that the care required to be used is greater than what is known as *ordinary care* and amounts to the highest degree of care, the reason given is that the instrumentality being used is a dangerous and subtle agency. Witness the decisions of the courts of this State in cases involving electricity, dynamite, street cars, passenger trains, etc. The General Assembly has by the statute referred to placed the highest degree of care to be exercised upon one controlling and operating an automobile and I believe that by so doing the classification has been stamped upon these vehicles which the courts must adhere to. I believe that the decisions of the courts of other States that an automobile is not a dangerous instrumentality were perhaps influenced by the fact that those States do not have a statute similar to ours. And so I think that an additional reason why the result reached in the opinion already on file is correct is that this automobile was a dangerous instrumentality, and was left by one having the control of it at a place where another, who had repeatedly been given the right to operate it, did find it and use it to the damage of the plaintiff. And the burden placed upon the owner of this instrumentality of showing that the person who did operate it on this occasion was without authority was not in the opinion of the jury lifted.

I think the motion for a rehearing and the motion to certify the cause to the Supreme Court should be overruled.

## ON MOTION TO TRANSFER TO THE SUPREME COURT.

STURGIS, J.—On reconsidering this case on defendants' motion to transfer same to the Supreme Court, I am convinced that, in any view of the case, this motion should be sustained. As this case was tried and determined in this court, the liability of defendant, R. S. Hogan, if any, is based on the relationship of master and servant held to exist between him and his son, the other defendant, who was in charge of and operating the automobile at the time of this accident. This case lays down the rule that, where an adult son, living with his father as a member of the family, uses the father's automobile, purchased for general family use, with the father's express or implied consent, on a trip purely for his own pleasure and in no way connected with any business of the father, then the relation of master and servant exists and the father is liable for any negligent act of the son while so using the father's automobile. That the son was on this occasion using this automobile purely for his own pleasure and in no way connected with any business of the father is conceded by both sides. I have no doubt that in so ruling this court has followed the decisions of the Kansas City Court of Appeals in Marshall v. Taylor, 168 Mo. App. 240, 153 S. W. 527, and Daily v. Maxwell, 152 Mo. App. 415, 133 S. W. 351. To rule otherwise than we have would make our decision in this case in conflict with the two decisions of our sister Court of Appeals, just mentioned. In following these decisions, however, it seems to me that this case, as well as those just mentioned, makes a radical departure from the law of master and servant, as heretofore existing in this State. It has heretofore been the law in this State that, in order to render the master liable for the negligent act of a servant, that relationship must exist at the time of such negligent

act and such act must have been committed in the course of the servant's employment and be connected with some business of the master in which the servant is engaged. [Garretzen v. Duenckel, 50 Mo. 104; Walker v. Railroad, 121 Mo. 575, 584, 26 S. W. 360.] These cases hold that the fact that the alleged servant is using the instrumentalities of the master at the time the accident occurs is not sufficient to create a liability. Of course, the son may be his father's servant and be engaged in his father's business in operating his automobile and the doctrine of *respondeat superior* would apply; but, how can it be said that, merely because a father permits his son to use his automobile for taking a purely pleasure ride of his own, the son is his servant in so doing and is engaged in the master's business. If so, it may well be said that every instrumentality of pleasure, furnished by the father to members of his family, makes each member a servant of the father in using the same and such use a business of the father which such servant is prosecuting for him.

In Spelman v. Delano, —— Mo. App. ——, 163 S. W. 301, the Kansas City Court of Appeals has recently held that where the master loans a horse to his servant to ride to and from his work, the relation of master and servant does not exist after the servant's day's labor is done and he is riding the horse home but rather that of a gratuitous bailee. The court there said: "If it be said that the bailor, by lending the horse, makes the bailee an agent for the care thereof and is thereby impliedly responsible for the latter's conduct in reference thereto, and also makes it possible for the injury to occur, the answer is that the bailee is not the bailor's agent in caring for the horse, else the bailor would be responsible for a *negligent injury committed by the bailee* in using the horse, and this has never been held to be so. . . . No one will say that, if Cook had negligently ran down and killed a

Hays v. Hogan

baby while riding the horse homeward, the plaintiff could be held liable simply because he lent Cook the horse." This doctrine is recognized and stated in Daily v. Maxwell, supra, where the court said: "All the authorities are in accord in holding that in an action based on the negligent running of an automobile the owner of the car who was not present at the infliction of the injury cannot be held liable except it be shown that the person in charge not only was the agent or servant of the owner but also was engaged at the time in the business of his service. [Evans v. Automobile Co., 121 Mo. App. 266; Lotz v. Hanlon, 217 Pa. 339; Slater v. Thresher Co., 107 N. W. Rep. 133; Patterson v. Kates, 152 Fed. Rep. 481; Reynolds v. Buck, 103 N. W. 946; Clark v. Buckmobile Co., 94 N. Y. Supp. 771; Howe v. Leighton, 75 Atl. Rep. 102; Jones v. Hoge, 92 Pac. 433; Lewis v. Amorous, 59 S. E. 338.] Where a chauffeur, either with or without his master's consent, uses the machine for his own business or for his own pleasure and negligently inflicts injury on another, the master cannot be held liable, for the reason that the negligent act being entirely outside the scope of the servant's employment, cannot call into action the rule of *respondeat superior*. The fact of consent is material only in the solution of the issue of whether or not the use of the machine was, in fact, on business of the master. [Cunningham v. Castle, supra.] Should we regard the relationship between the two defendants merely as that of owner and chauffeur —master and servant—the owner should not be held liable for the negligence of the chauffeur, since the evidence shows beyond question that the latter was using the machine merely for his own pleasure." That Court then said that a minor son was more than a chauffeur or servant when using his father's automobile for a use for which it was kept, to-wit, for a pleasure car for the family. On what prinicple of law this fact makes the owner liable is not explained and the court, after

discussing it, falls back on the doctrine of master and servant and places the liability on that ground, by saying: "We conclude that in running the car with the consent of his father and within the scope of family uses, Ernest was the agent and servant of his father."

The courts of other States deal with cases similar to this by applying the usual rules of law applicable to master and servant, if such relation can be held to exist at all, which exempt the master from liability, where the servant uses the master's instrumentalities merely for his own pleasure or business. [Tanzer v. Read, 145 N. Y. Supp. 708; Parker v. Wilson (Ala.), 60 So. 150, 43 L. R. A. (N. S.) 87; Doran v. Thomsen (N. J.), 71 Atl. 296, 19 L. R. A. (N. S.) 335; Maher v. Benedict, 108 N. Y. Supp. 228; Smith v. Jordon, 211 Mass. 269, 97 N. E. 761; Howe v. Leighton (N. H.), 75 Atl. 102; Cunningham v. Castle, 111 N. Y. Supp. 1057; Lotz v. Hanlon (Pa.), 66 Atl. 525, 10 L. R. A. (N. S.) 202; Patterson v. Kates (Pa.), 152 Fed. 481; Danforth v. Fisher, 75 N. H. 111, 71 Atl. 535, 21 L. R. A. (N. S.) 93.]

I am persuaded that a distinction should be made as to the liability of owners of automobiles for negligent injuries by such machines different from that applied to owners of horses, carriages and other such harmless instrumentalities and that our statute contemplates such distinction. To make such distinction, however, by holding that the relation of master and servant exists between the father, as owner, and a member of his family using the machine for his own pleasure, merely because that is one of the purposes for which the machine is provided, is violative of the general law governing the liability of the master for the negligent acts of the servant. The relation of master and servant does not spring from the family relationship. [Paul v. Hummel, 43 Mo. 119; Needles v. Burk, 81 Mo. 569, 572.] While an automobile is not a dangerous instrumentality per se, Daily v. Maxwell,

supra, it does belong to that class of things requiring the highest degree of care in their use on public highways. Such machines, therefore, should only be intrusted to and permitted to be used by one having the skill, qualifications and experience necessary to use such high degree of care; and the owner might well be held liable for negligent injuries resulting from permitting his machine to be run on a public highway by one, whether a member of his family, a servant, or whatnot, who by reason of his age, lack of experience, or skill, or from habits of carelessness or recklessness, is not a suitable person to operate so dangerous an instrumentality. This case, however, was not tried on that theory.

I, therefore, deem this case in conflict with the decisions of the Supreme Court in Garretzen v. Duenckel, 50 Mo. 104, and Walker v. Railroad, 121 Mo. 575, 584, 26 S. W. 360, and other like cases there cited, and ask that the same be certified to the Supreme Court for final determination.