# Royal Smith, Appellee, v. William E. Tappen, Appellant.

## Gen. No. 6,442.

1. PLEADING, § 409*—*what not put in issue by plea of general issue.* A plea of general issue in an action to recover damages for injuries sustained by plaintiff being run over by an automobile alleged to have been owned by defendant and operated by his minor son, *held* not to put in issue defendant's ownership and operation of the car.

2. AUTOMOBILES AND GARAGES, § 3*—*when denial of motion for leave to file plea is proper.* A motion at close of the evidence, in an action to recover damages for injuries sustained by plaintiff by being run over by an automobile alleged to have been owned by defendant and operated by his minor son, for leave to file a plea denying defendant's ownership of an automobile of a certain make, *held* properly denied where the declaration did not allege that the automobile was of such make although some of plaintiff's witnesses

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CCVIII 28 .

so spoke of it and defendant proved it was of another make, as such issue was immaterial.

3. APPEAL AND ERROR, § 1306*—*when presumed that court refused to permit filing of plea because not in proper form.* Where a plea presented with motion for leave to file same was not preserved in the bill of exceptions, *held* that it would be presumed that the court refused to permit it to be filed because it was not in proper form.

4. AUTOMOBILES AND GARAGES, § 3*—*when evidence shows negligent injury by automobile.* Evidence *held* sufficient to warrant a finding of defendant's negligence, in an action to recover damages for personal injuries by being run over by an automobile.

5. AUTOMOBILES AND GARAGES, § 3*—*when responsibility of father for negligent operation of automobile by son is shown.* Evidence *held* sufficient to warrant the finding of defendant's responsibility for his minor son's negligence in operating defendant's automobile, which he bought and kept for family use, where he permitted his son to have access to the place where it was kept and knew his son often used it and took no steps to prevent it.

6. INSTRUCTIONS, § 106*—*when instruction that no inference can be drawn against defendant not producing witness is properly refused.* An instruction that no inference could be drawn against defendant from his failure to call as a witness his minor son, whose alleged negligence in the operation of defendant's automobile caused the injuries to plaintiff, because of which an action to recover damages was brought, *held* properly refused.

7. DAMAGES, § 211*—*when instruction as to lack of evidence of permanent disability is properly refused.* An instruction that there was no evidence of permanent disability of plaintiff and that the jury had no right to guess that there may be such disability in view of the lack of testimony on that point, in an action to recover damages for personal injuries, *held* properly refused where the evidence showed that plaintiff was run over by defendant's automobile and the wheels on one side seemed to have passed over his head, and that he was afflicted up to the trial with a lack of memory, and there were several circumstances from which the jury might infer permanency of injury.

Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed August 7, 1917.

GARNSEY, WOOD & LENNON, for appellant.

O'DONNELL, DONOVAN & BRAY, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE DIBELL delivered the opinion of the court.

Plaintiff was run over by an automobile driven by defendant's minor son on a public highway a short distance west of the City of Joliet, and brought this suit to recover damages for the injuries inflicted upon him thereby. The case was tried upon an amended declaration and additional counts and pleas of the general issue to each, and there was a verdict and a judgment for plaintiff for $700, from which defendant appeals. The sum awarded was very moderate compensation for the injuries received. Defendant contends that the proof does not show that the injuries were inflicted by his car; that if it was his car, the proof does not show that his son was negligent in its operation, and that he is not responsible for the negligence of his son.

Defendant is not in a position to question his ownership and control of the car which inflicted the injury. His only plea was the general issue. The declaration averred in many ways that defendant owned and possessed the car which inflicted the injury, and that it was being operated by his son, agent and servant, for the pleasure of a member of his family. The plea of the general issue did not put in issue his ownership and operation of the car. This is stated in *Pell v. Joliet, P. & A. R. Co.*, 238 Ill. 510, and *Brunhild v. Chicago Union Traction Co.*, 239 Ill. 621, and in cases there cited. This rule was qualified in *Clark v. Wisconsin Cent. Ry. Co.*, 261 Ill. 407, but was reaffirmed in *Carlson v. Johnson*, 263 Ill. 556, where the first syllabus summarizes what is there held as follows:

"The occupation, ownership or operation of the property or instrumentalities which are set out as connected with or as the cause of the injury, or the character in which the parties appear in the litigation, are matters of inducement, which are not put in issue by a plea of the general issue."

But defendant says that at the close of the evidence he asked leave to file a special plea to deny the ownership of the automobile and to deny that he had under control, either by self or family, on the day of the accident, such an automobile as is described in this case, and that the court denied that request, and erred in that ruling. This is not what he requested, nor what the court denied. The bill of exceptions shows that at the close of the evidence defendant's counsel asked leave to file a special plea denying the ownership of a 'Ford automobile, and this was what was denied, and all that was denied. This would have raised an immaterial issue, for the declaration did not charge that the machine in question was a Ford automobile. What was aimed at was this. Some of plaintiff's witnesses called this a Ford car. Others did not. One witness said he afterwards heard it was a Ford car, but he would not swear to it. Defendant proved that his car was a Buick. At the time of the accident no one discussed the style or character of the car. All were concerned with the injured child and in getting him out of the street and getting defendant's son to take him with another person to a hospital. The bill of exceptions shows that defendant's son, who drove this automobile, was in the court room at the commencement of the hearing of proofs and he was not called as a witness. The bill of exceptions shows that the proposed plea was presented with the motion. It is not preserved in the bill of exceptions. We must presume that the court refused to permit it to be filed because it was not in proper form. It is also clear from the evidence that defendant's son was driving defendant's car, and that those of plaintiff's witnesses who undertook to name defendant's car were simply mistaken in calling it a Ford.

Plaintiff was 5 years, 4 months and 13 days old at the time of the injury and therefore no negligence

could be imputed to him. Defendant's car was being driven east on a much traveled highway, called the Troy road. A short distance outside of the City of Joliet some telephone men were trimming trees on the south side of the highway and had a wagon in the highway. Defendant argues the case here as if plaintiff ran out from behind this wagon just in front of this car. There is proof from which this can be inferred, but there is other proof that there were several little boys around there and that plaintiff was 200 or 300 feet east of the wagon and was standing in the middle of the road, looking east for his father when he was struck, and for 2 or 3 minutes before that, and also that the driver of the car was not looking ahead but was watching the operation of trimming the trees. The jury were warranted from the evidence in finding him negligent.

Defendant bought and kept this car for the use of himself and his family, which consisted of himself and wife and this son. The son often drove the car. The defendant testified that he had given the son orders not to use the car except by his express permission, and that he had not given his consent on this occasion; but there was evidence that the son often ran it alone, and also with his father and mother and others in the car, and we think it clear the father knew it and did not prevent it. The son had access, in his father's absence and with his father's permission, to the private garage where the father kept the car. There was proof of a conversation some time after this accident between the father and a brother of plaintiff and the defendant. It is argued that this was in an effort to obtain a settlement and therefore was inadmissible. Plaintiff's father and brother did testify that they went to defendant's house by appointment for the purpose of trying to get a settlement, but they were called upon to state what was there said and it did not appear

that anything concerning a settlement was mentioned in the conversation. Apparently defendant said his son was not to blame and that it was an accident, and no effort for a settlement was made. The proof is that in that conversation defendant said that his son ran the car; that he was the family chauffeur and frequently took them out driving. Defendant did not deny that conversation. The question of the liability of a father for the negligence of a child while running the father's automobile has been discussed in a number of recent cases. In *Marshall v. Taylor*, 153 S. W. 527 [168 Mo. App. 240, 6 N. C. C. A. 313], the Kansas City Court of Appeals held as follows, according to the third syllabus preceding the opinion: "Where an automobile was provided by a father for the use of members of his family, and an adult son was chauffeur for them, and was permitted to use the car for his own pleasure, the son was an agent of the father, though using the car for his own pleasure." In *Hays v. Hogan*, 165 S. W. 1125 [180 Mo. App. 237], the Court of Appeals of Springfield, Missouri, held as follows, as stated in the fourth syllabus: "Where an adult son, living with his father as a member of the family, used the father's automobile, purchased for general family use, with the father's express or implied consent, on a trip purely for his own pleasure and in no way connected with any business of the father, the relation of master and servant existed, and the father was liable for the death of plaintiff's husband, caused by the negligence of the son in so operating the car." In *Kayser v. Van Nest*, 125 Minn. 277, 146 N. W. 1091, 51 L. R. A. (N. S.) 970, the Supreme Court of Minnesota said:

"Defendant's daughter, while operating the car by his authority and upon his business, was defendant's servant within the meaning of the rule, and he was responsible for her acts to the same extent that he would have been responsible for the acts of any other

servant. Defendant might properly make it an element of his business to provide pleasures for his family; and, as the car was intended for the use of the members of the family for purposes of pleasure as well as for other purposes, and the daughter had authority to take it and operate it for such purposes, it was at least a question for the jury whether, at the time of the accident, she was not the servant of defendant and engaged upon the business of defendant.''

This was preceded by the statement that if the person operating an automobile was not the servant of its owner nor engaged in its owner's business, the owner would not be responsible for the negligence of the person operating it. This subject has been discussed at large in *McNeal v. McKain,* 33 Okla. 449, 41 L. R. A. (N. S.) 775, in *Birch v. Abercrombie,* 74 Wash. 486, 50 L. R. A. (N. S.) 59, and in the notes to said cases. Under these authorities and the evidence in this case we are of opinion that the jury were warranted in holding defendant responsible for the negligence of his son in operating this car. This defendant owned a vehicle which could be driven on crowded streets and busy thoroughfares with great speed at great risk to the lives and property of others; he bought it and kept it, not merely for his own use, but also for the comfort and pleasure of his family; he permitted his minor son access to the place where it was kept, when he was absent; he knew his son often used it and took no steps to prevent it; and it was being used by the son for his own pleasure when the son's negligent manner of running it caused the injury. A father is not liable for his minor son's torts merely because of the relationship. But where he has furnished an agency of this kind for his minor son's use and has permitted such use, and the son is negligent in such use, and inflicts an injury thereby, the father ought to be held responsible. Any other rule would leave the injured party without a practical remedy. The

father by furnishing his minor son with this agency and permitting its use has made himself responsible. There are cases not in harmony with the foregoing rule, but we conclude we ought not to follow them.

It is urged that the court erred in refusing two instructions requested by defendant. The first was to the effect that no inference could be drawn against defendant from his failure to call his son as a witness. Naturally the plaintiff should not be required to call the defendant's son who was accused of having negligently caused the injury. He was a member of the family of the defendant and would be interested in sustaining defendant's contention that the car was not negligently driven. The instruction was improper under 2 Chamberlayne on the Modern Law of Evidence, sec. 1075, where the rule is thus stated: "In proportion as it is to the interest of the party to submit the evidence of an available witness, the jury are entitled to infer from his neglecting to do so that his evidence, if produced, would not be favorable to the party." To the same effect is Jones on Evidence (2nd Ed.) sec. 19. The second instruction referred to was to the effect that there was no evidence of a permanent disability, and the jury had no right to guess that there may be such disability in view of the lack of testimony on this point. The little boy was entirely run over by the automobile and the wheels on one side seem to have passed over his head, and up to the time of the trial he was afflicted with a lack of memory. There are several circumstances in evidence from which the jury might infer the permanency of the injury. The court properly left that question to the jury.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*